[No. 7,753.—Department One.]

## R. T. DAVIS *v.* B. B. BAUGH.

Deed—Legal Title.—F. having a possessory title to land, sold (in 1864) to K. one hundred feet front of the same, and K. (in 1875) sold to the defendant, to whom, in the same year F. also sold an additional hundred feet adjoining. The defendant sold an individed half of the two hundred feet to another, who (in the spring of 1876) sold to C. No deeds passed, but the parties respectively took and maintained possession under their purchases. July 5, 1876, F., with the consent of B., conveyed the two hundred feet to C. by deed; but there was no new consideration either to F. or B. September 13, 1880, C. conveyed the whole premises to D., who took with notice that B. was in the possession of the premises conveyed, claiming to own and hold an equal undivided one half thereof. In an action by D. against B. to quiet title, in which the latter filed a cross-complaint demanding from the plaintiff a conveyance of an undivided half of the land, and it was so adjudged,

*Held:* The deed from F. to C. vested the latter with the legal title to the whole lot, or what was equivalent thereto as between the parties.

ID.—ID.—RESULTING TRUST.—A resulting trust arose in favor of the defendant by the execution of the deed to C.

ID.—ID.—ID.—SUFFICIENCY OF EVIDENCE—MORTGAGE.—As to the claim of the plaintiff, that the deed to C. should be decreed a security merely for indebtedness of defendant to C., the Court, in effect, found no mortgage, and the finding is sustained by the evidence.

ID.—ID.—ID.—STATUTE OF LIMITATIONS.—Defendant being a vendee in possession, and having paid the full purchase price, the statute did not run in favor of the vendor or his assignee, nor against the vendee's right to demand a conveyance.

ID.—ID.—ID.—CONSTRUCTIVE NOTICE—POSSESSION AS NOTICE.—The finding, that the plaintiff took with notice of the defendant's possession and claim, is sustained by the evidence; and his possession was proof of notice, not only of defendant's claim but also of his right, in the absence of evidence that plaintiff's inquiry, after having been prosecuted with due diligence, did not disclose it.

ID.—ID.—ID.—ID.—ID.—PURCHASER IN GOOD FAITH.—As to the point suggested, that a finding of defendant's possession, or even of his possession "claiming to hold and own an equal one half," is not a finding of the ultimate fact of actual notice of the defendant's title, it is unnecessary to decide the question; as neither the finding nor the evidence, as construed by the Court below, shows that plaintiff was a purchaser for "valuable consideration."

ID.—ID.—ID.—CONCLUSIONS OF LAW.—Where some of the conclusions of law in a decision are not properly drawn from the facts found, this is no ground for reversing the judgment, if the ultimate conclusion, upon which the judgment rests, is not erroneous.

ID.—ID.—ID.—VARIANCE.—The variance between the actual finding and the averment of the cross-complaint, that C. obtained the deed from F. fraudulently and without the knowledge of defendant, is immaterial. Whether the deed was taken with or without the knowledge or consent of the defendant, the legal result is the same.

ID.—ID.—ID.—ID.—SUFFICIENCY OF FINDINGS.—The following allegations of the cross-complaint are, in effect, disposed of by the findings. (1) "That defendant *owned* an undivided one half of the land." In equity, one who has a perfect equity therein, owns land. (2) "That defendant paid all the consideration for which said deed to C. was executed." (3) "That C. had no title or claim to any of said land, other than such as was based on and derived from the verbal agreement between the defendant and Firmstone (C.'s vendor) and between Firmstone and C." (4) "That C. had and could convey no other interest in said land than an undivided one half." (5) "That C. held an undivided one half in trust for the sole use and benefit of defendant." (6) "That F. agreed to give defendant a deed for the land." It is sufficient to say, with respect to these and other specifications of particulars wherein the Court failed to respond to issues, that the alleged omissions are of matters which are either necessary inferences of fact from facts which are found, or are themselves legal conclusions; and

that the matters found which are claimed to vary from the averments of the pleadings, vary only in an immaterial degree.

ID.—ID.—ID.—EVIDENCE—POSSESSION—OWNERSHIP—PAYMENT OF TAXES. The Court did not err in sustaining objections to the following questions: (1) "Who has claimed possession of that property since 1862 or 1863?" (2) "Who owned it?" (i. e., the land.) (3) "Do you know what agreement, if any, B. had with F.; who formerly owned it before F. bought it?" (4) "What did Baugh say in regard to the occupancy of it?" (5) "To whom has the lot in dispute been asssessed, and who has paid taxes on it since 1876?"

APPEAL from a judgment for the defendant in the Superior Court of the County of Plumas. CLOUGH, J.

*W. W. Kellogg* and *John C. Hall,* for Appellant.

The deed from Fristch to Carter vested the latter with the legal title to the whole lot, or what was equivalent thereto, as between the parties.

A resulting trust did not arise in favor of defendant, by the execution of the deed to Carter. (*Jackson* v. *Morse,* 16 Johns. 197; S. C., 8 Am. Dec. 306.)

If the deed to Carter be decreed a security merely for the indebtedness of Baugh to Carter, it still passes the legal title, and the defendant, not having set up in his answer that it was intended as a mortgage, nor offered to redeem or pay the amount due, is not entitled to any relief, and the deed must prevail. (*Hughes* v. *Davis,* 40 Cal. 117.)

The findings and conclusions of the Court are inconsistent with each other and with the case stated in the cross-complaint, and with the controlling and undisputed facts.

The findings do not cover all the material issues. (*Botsford* v. *Burr,* 2 Johns. Ch. 405; *Rogers* v. *Murray,* 3 Paige, 398; *White* v. *Carpenter,* 2 id. 217; *Whiting* v. *Gould,* 2 Wis. 552; *Fair* v. *Stevenot,* 29 Cal. 486; *Pico* v. *Gallardo,* 52 id. 206; *Coveny* v. *Hale,* 49 id. 556; *Brown* v. *Volkening,* 64 N. Y. 76; *Kendall* v. *Lawrence,* 22 Pick. 540; *Smith* v. *Yule,* 31 Cal. 180.)

The Court erred in ordering plaintiff to make a conveyance. (*Brannan* v. *Paty,* Cal.)

*D. W. Jenks* and *J. D. Goodwin,* for Respondent.

None of the parties had such an interest in the land as made a deed necessary to the transfer of it. (C. C., §§ 1052, 1091.)

" Rights resting upon possession only and not amounting to an interest in the land, are not within the statute of frauds, and no conveyance other than a transfer of possession is necessary to pass them." (*Table Mountain Co.* v. *Stranahan,* 20 Cal. 198; *Gatewood* v. *McLaughlin,* 23 id. 178.)

All the findings of fact being admitted, or shown to be sufficiently supported by the evidence, do they justify the conclusions which the Court deduces therefrom ?

McKINSTRY, J.:

The findings of the Court below were:

" I. That the land in controversy is public land of the United States, not located nor claimed, nor used by the plaintiff or defendant or either of their predecessors in interest as mineral lands.

" II. That some time in 1856, one John B. Fristch was in possession of the tract of land in controversy, the same being part of a much larger tract.

" III. That some time in 1864, said Fristch sold to one Knoll all his right, title, and interest in and to one hundred feet front of the lands in controversy, and that thereupon said Knoll entered upon said tract, put a building thereon, and inclosed the same with a substantial fence.

" IV. That in 1870 or in 1871 said Knoll moved his buildings from said tract of land, and the defendant remained in occupancy thereof as a tenant at will of said Knoll.

" V. That some time in 1875, and before the sale to Firmstone, hereinafter found, said Knoll agreed to sell and did sell to said defendant B. B. Baugh, all his right, title, and interest in and to said one hundred feet front, said Baugh paying him therefor the sum of seventy-five dollars, and agreeing to pay him the further sum of twenty-five dollars.

" VI. That immediately thereupon said Baugh entered into possession of said one hundred feet front, claiming the same in his own right.

"VII. That in 1875 the defendant bought of said J. B. Fristch the other one hundred feet of the land described in the complaint, and paid him therefor the sum of seventy-five dollars, and thereupon entered into and occupied said tract.

" VIII. That at the time of the purchase last aforesaid the

whole tract of land described in the complaint was inclosed by a substantial fence.

" IX. That soon after the purchase of said land from said Fristch, the defendant sold to one Firmstone the undivided one half of all his right, title, and interest in and to the whole tract of land described in the complaint, and thereupon admitted said Firmstone into possession, with himself, as a tenant in common of the whole tract.

" X. That thereupon, and during the year 1875, said defendant and said Firmstone erected a building on said tract of land and carried on the saloon business.

" XI. That in the spring of 1876 said Firmstone sold to J. S. Carter his interest, to wit:   The undivided one half of the tract of land described in the complaint, and his undivided one-half interest in the saloon business.

" XII. That some time before said sale Firmstone paid to said Knoll twenty-five dollars under the agreement made by defendant Baugh at the time of the purchase from Knoll, as heretofore found.

" XIII. That immediately after purchasing the interest from said Firmstone as above, said J. S. Carter entered into possession of all the property and rights so acquired through his tenant, Thomas Davis.

" XIV. That on the fifth of July, 1876, John B. Fristch, with the consent of defendant Baugh, granted, bargained, sold, and conveyed to J. S. Carter, by deed duly recorded on page 155, Book No. 7, of Deeds, Plumas County Records, the whole of the property described in the complaint.

" XV. That at the time of the making and delivery of said deed, and at no other time, did said Carter pay, or agree to pay to said Fristch or to said Baugh, any sum of money or any consideration whatever, and that at the time of executing said deed said Fristch was not in possession of said lands, and claimed no right, title, or interest therein.

" XVI. That on the sixth day of July, 1876, said J. S. Carter signed a lease, purporting to lease, demise, and let to one Thomas Davis and this defendant, the premises in controversy, for the period of four years from the sixth day of July, 1876.

" XVII. That the said defendant Baugh never agreed with

said Carter to take said lease, and never knew that it purported to be a lease running to him, said Baugh, and that no payments of rent were ever paid to said Carter under said lease.

"XVIII. That before the expiration of the term mentioned in said lease, said Thomas Davis, without any consultation with said defendant Baugh, surrendered said lease to said Carter.

"XIX. That on the thirteenth day of September, 1880, said J. S. Carter executed to the plaintiff herein a deed purporting to convey to him the premises described in the complaint.

"XX. That at the time of receiving said deed from said Carter, said plaintiff knew that said defendant Baugh was in possession of the premises conveyed, claiming to hold and own an equal undivided one half thereof.

"XXI. That said deed was duly recorded on the day of its date, in Book 10 of Deeds, page 777, Plumas County Records.

"XXII. That said defendant, Baugh, never claimed to own more than an undivided one half of the premises in controversy since his sale of one half thereof to said Firmstone.

"XXIII. That no conveyance in writing was made from Fristch to Knoll, from Knoll to defendant Baugh, or from Fristch to said defendant."

The points of appellant, and our responses thereto, are as follows:

"I. The deed from Fristch to Carter vested the latter with the legal title to the whole lot, or what was equivalent thereto, as between the parties." The parties respectively deraigned their rights from one John B. Fristch. Fristch, therefore—the common source—must be assumed to have been the owner of the lands, and to have retained the legal title until his conveyance thereof to Carter, grantor of plaintiff. This first point is well taken.

"II. A resulting trust did not arise in favor of defendant by the execution of the deed to Carter." The findings and evidence show that Fristch had been paid in full for the lands, and that he retained the naked legal title in trust for those who had paid him for them and taken possession, and their assignees. Assuming the evidence to sustain the finding that Carter paid nothing for the deed from Fristch, the

mere fact that defendant "consented" to the conveyance of
the legal title to all the lands to Carter did not estop him
from asserting, against the latter, his equitable title to one
half. Defendant and Carter were co-tenants with respect to
the equitable title, and the latter took the conveyance of the
legal title charged with the duty to convey it—to the extent
of an undivided moiety of the lands—to defendant.

Nor can we say the finding that Carter paid nothing in
consideration of the deed from Fristch is unsustained by the
evidence. Carter does not pretend that any new consideration
passed to Fristch. Did he pay money to or for the benefit of
defendant in consideration of the latter's consent that the
legal title should go to him ? His testimony—as it appears
in the bill of exceptions—is uncertain and indefinite. In one
place, it is true, he says, " I paid fifteen hundred and odd dol-
lars to *Firmstone* for Baugh & Davis *in consideration of that
deed.*" But, in another place, " I advanced one thousand five
hundred dollars to Baugh & Davis *to buy Firmstone out.*"
(Firmstone was co-tenant with defendant Baugh.) And in a
third place, " I agreed to go Davis', Davis' and Baugh's
*security* for one thousand five hundred dollars to Firmstone,
and I had to pay every dollar of it." The witness Carter
also stated that he delivered a certain lease to defendant,
which the latter as a witness positively denied. The Court
below found that Carter was mistaken in his statement as to
the lease, and refused to credit his testimony in so far as it
tended to show that he had rendered consideration to defend-
ant in return for the latter's consent that the legal title should
be conveyed to him, Carter. We can not, under the circum-
stances, reverse the determination of the Superior Court with
reference to the credibility to be accorded the several wit-
nesses. If defendant owed money to Carter, this circumstance
can not affect the rights of the respective parties in the prop-
erty, unless it was agreed that Carter should take the convey-
ance of the legal title in consideration of, or as security for,
such indebtedness.

" III. If the deed to Carter be decreed a security merely
for the indebtedness of Baugh to Carter, it still passes the
legal title, and the defendant not having set up in his answer
that it was intended as a mortgage, nor offered to redeem or

pay the amount due, is not entitled to any relief and the deed must prevail."

"IV. In any event, the decree should have required the defendant, as a condition precedent to the conveyance, to pay the amount advanced by Carter by reason of the deed from Fristch to him."

What is said under point two is sufficient answer to points three and four, since the latter are based upon the assumption that Carter held the legal title as security for an indebtedness from defendant.

"V. But even if the deed were a mortgage, the defendant can have no relief therefrom, because the right to redeem was barred at the time of the commencement of the action." The Court found no mortgage. Defendant was a vendee (the vendor having been paid the full purchase price), in *possession*. The statute had not run in favor of the vendor or his assignee, nor against the vendee's right to demand a conveyance. (*Love* v. *Watkins*, 40 Cal. 547.)

"VI. Finding number 20 is wholly unsupported by the evidence."

Finding number 20 is as follows: "At the time of receiving said deed from said Carter, said plaintiff knew that said defendant Baugh was in possession of the premises conveyed, claiming to own and hold an equal undivided one half thereof."

There was certainly evidence tending to show that plaintiff knew of defendant's possession. The fact was that defendant claimed one half, and plaintiff was put upon inquiry by the possession. It does not appear that he made inquiry and failed to ascertain the nature of defendant's title. The Court might therefore entertain the presumption that he ascertained or could have ascertained the truth. The possession was proof of notice not only of defendant's *claim*, but also of his right, in the absence of evidence that plaintiff's inquiry, after having been prosecuted with due diligence, did not disclose it. (*Thompson* v. *Pioche*, 44 Cal. 508.)

In this connection it has been suggested that a finding of defendant's possession, or even of his possession "claiming to own and hold an equal one half," is not a finding of the ultimate fact of actual *notice* of defendant's title.

We do not deem it necessary to decide this question. If defendant had acquired no prior right the question does not arise. But if the prior equitable rights of defendant existed as a fact, neither the finding, nor evidence as construed by the Court below, shows that plaintiff was a purchaser for a "valuable consideration." Plaintiff, therefore, took subject to such equitable rights.

"VII. The findings and conclusions of the Court are inconsistent with each other, and with the case stated in the cross-complaint, and with the controlling and undisputed facts." Where some of the "conclusions of law" in a decision are not properly drawn from the facts found, this is no ground for reversing the judgment if the ultimate conclusion upon which the judgment rests is not erroneous in view of the facts found. In such case the minor conclusions are at most but errors—erroneous deductions which do not injure the party complaining of them.

There is no contradiction between the finding and the averment of the cross-complaint in the following particular, pointed out by appellant, such as changes the legal result. The complaint alleges that Carter obtained the deed from Fristch fraudulently and without the knowledge of defendant. The Court finds that it was obtained with the consent of defendant—not fraudulently and without his knowledge. The defendant failed to establish the fraud committed when the deed was taken, or that it was taken without his knowledge or consent. But the Court finds that the deed *was taken* by Carter; that is, finds part of what is alleged. Whether taken with or without the knowledge or consent of defendant, the legal result is the same, since Carter took it subject to defendant's equity. There was no pretense at the trial that plaintiff was misled by a variance between allegation and proof. (C. C. P., §§ 469, 470, 471.)

"VIII. The findings do not cover all the material issues." And as specifications, hereunder, of the particular issues raised by the cross-complaint, which are not responded to by the findings, the following allegations of the cross-complaint are referred to:

"1. That defendant *owned* an undivided one half of the land." In equity one who has a perfect equity therein *owns*

land. Besides, the cross-complaint alleges facts which, if true, show ownership as recognized by a Court of equity.

"2. That defendant paid all the consideration for which said deed to Carter was executed." The findings show that Fristch was paid in full for the land, and that Carter paid nothing for the deed. Equity applies the consideration paid for the land to the deed.

"3. That Carter had no title or claim to any of said land other than such as was based on and derived from the verbal agreement between defendant and Firmstone and between Firmstone and Carter." Upon the facts found, the conclusion of law thus alleged was in legal effect true. Carter had no claim which he could assert against defendant, except that derived from Firmstone.

"4. That Carter had and could convey no other interest in said land than an undivided one half." The words immediately following the foregoing allegation in the complaint, "and that Carter held an undivided one half of said land for the sole use and benefit of defendant," plainly indicate (however inartificially the intent is expressed), that it was intended to allege, that Carter owned absolutely, and freed of defendant's equity, only one half.

"5. That Carter held an undivided one half in trust for the sole use and benefit of defendant." This is a necessary inference from the facts found.

Appellant also suggests that the Court failed to find, upon the averment of the cross-complaint, that Fristch *agreed* to give defendant a deed for the land for which defendant paid seventy-five dollars. The Court did find, however, that the sale was made, the purchase price paid, and that defendant entered into possession. Thereby the legal duty was imposed upon Fristch to give his vendee, or his assignee, a deed. The law will imply his promise to perform this duty.

Without entering further into detail—which would extend this opinion without subserving any useful purpose—it is sufficient to say, with respect to appellant's specifications of particulars wherein the Court failed to respond to issues, that the alleged omissions are of matters which are necessary inferences of fact from facts which are alleged and found; or

are themselves legal conclusions.  And that the matters
found, which are claimed to vary from the averments of the
pleading, vary only in an immaterial degree—no objection
having been taken at the trial to the evidence supporting
them on the ground of variance from the pleading.

"IX. The Court erred in sustaining the objections to the
questions (to Carter as a witness) found at folios 70, 71, 73,
and 75, and it seems to us, most clearly erred in regard to
the question at folio 73,  *  *  *  and also in regard to the
question at folio 75."

The question at folio 70 is: "Who has claimed possession
of that property since 1862 or 1863?"  The question was not
limited to claims by the parties to this action, nor to claims
connected with acts of possession and constituting a part of
the *res gestæ.*  The Court was called on to try the *rights,* not
the *abstract* claims of third parties, or even of these parties,
or any of their predecessors.  At folio 71: "*Who owned it?*"
The determination of the main question in issue could not
thus be transferred to a witness.  Also at folio 71: "Do you
know what agreement, if any, Baugh had with Fristch?
Who formerly owned it before Fristch bought it?"  This
was a double question, the last clause of which was improper,
because both parties claimed from Fristch.

At folio 73: "What did Baugh say in regard to the occu-
pancy of it?"  The declarations of a person in possession, in
derogation of his own title, are ordinarily admissible.  But
the error of the Court, if error it was, in rejecting the ques-
tion, did not injure plaintiff.

The witness Carter had already stated, without objection,
"Baugh said he had no title,  *  *  *  he admitted he
was an occupant by the permission of Fristch."  It is diffi-
cult to imagine any answer to the question at folio 73, which
could more strongly have indicated a disavowal by defendant
of all independent right of possession.

But there was no *actual dispute* at the trial as to the facts
showing the right of possession in defendant.  The witness
Carter himself said: "Mr. Fristch first let Knoll have the lot;
then Knoll let Baugh have it."  Fristch testified: "I sold a
lot to Knoll and got my pay for it.  I did not own it any
more.  Knoll built a fence around it.  *  *  *  I never gave

a deed to Knoll. I think Baugh bought the lot of Knoll. Baugh bought the lot adjoining; he paid me seventy-five dollars for it." From the time Baugh paid me the money, I claimed that it was his lot." "He has occupied the lot since '66." "Baugh wanted a deed to the two lots, and I signed the deed he brought me." (Deed to Carter.) Upon these and the other material facts showing that defendant, prior to his sale of one half to Firmstone, had possession as purchaser under executed oral contracts, no issue was made in the evidence. The plaintiff sought to show that defendant was estopped from *asserting* his right by reason of his having taken a lease from the grantor of plaintiff, and that the deed from Fristch was made to Carter in consideration of value passing to or for the benefit of defendant. Upon both these issues the Court below found against the plaintiff. In view of the real points disputed at the trial, the action of the Court in sustaining the objection to the question last above mentioned could not have injured plaintiff.

The fact, which appellant insists shows error at folio 75 of the transcript, is the ruling of the Court below sustaining defendant's objection to the question: "To whom has the lot in dispute been assessed, and who has paid taxes on it since 1876 ?"

If the question was admissible, it was by virtue of Section 325 of the Code of Civil Procedure. But if the purpose was to show that plaintiff had paid the taxes, that fact would certainly have added nothing to plaintiff's right as against defendant's possession; if to show that defendant had *not* paid the taxes, the matter was no part of plaintiff's case.

Judgment affirmed.

Ross and MYRICK, JJ., concurred.