[Civ. No. 21507.   Second Dist., Div. Three.   Nov. 13, 1956.]

DAVID I. SOBO, Appellant, v. BOARD OF POLICE COMMISSIONERS OF CITY OF LOS ANGELES, Respondent.

Minsky & Garber and B. W. Minsky for Appellant.

Roger Arnebergh, City Attorney, Donald M. Redwine, Assistant City Attorney, and Eugene Didak, Deputy City Attorney, for Respondent.

WOOD (Parker), J.—Petitioner sought a writ of mandate compelling the Board of Police Commissioners of Los Angeles (referred to as the board) to renew permits to conduct a secondhand business. Judgment was in favor of the board. Petitioner appeals from the judgment.

On April 8, 1955, the board cited petitioner to show cause why his 1955 applications for renewal of (1) his pawnbroker's permit, (2) his secondhand (general) permit, and (3) his secondhand (jewelry) permit should not be denied in accordance with the complaints which were served with the citations. The complaint, with respect to the pawnbroker's permit, alleged (in paragraph III) that petitioner was not a fit and proper person to engage in the pawnbroker business and that said business as carried on by him did not comport with public welfare, in that: about December 28, 1954, he committed petty

theft of $12 from Daniel Couron; on said date he charged said Couron an excessive rate of interest; on and prior to December 29, 1954, petitioner did not keep an accurate record of charges on pawned articles; on and prior to said December 29 he did not keep a fully described record of articles pawned; about October 27, 1954, and thereafter he charged Mary Clark an excessive rate of interest; about June 16, July 16, and August 10, 1954, he charged Esther Hallis an excessive rate of interest. The complaints, with respect to the secondhand permits, alleged (in paragraph III of each complaint) that petitioner was not a fit and proper person to engage in the secondhand dealer business and that said business as carried on by him did not comport with the public welfare, in that: about December 28, 1954, he committed petty theft of $12 from Daniel Couron; on said date he charged said Couron an excessive rate of interest; on and prior to December 29, 1954, he did not keep fully described records of the articles purchased or pawned; about October 27, 1954, and thereafter he charged Mary Clark an excessive rate of interest; about June 16, July 16, and August 10, 1954, he charged Esther Hallis an excessive rate of interest.

A hearing on the citations was held before a hearing examiner of the board on April 29, 1955. The examiner's report, recommending denial of the three applications, was filed with the board. Petitioner filed exceptions to the report. The board denied the exceptions, adopted the recommendation of the examiner, and denied the applications for permits.

In the petition for a writ of mandate, petitioner did not seek an order requiring the board to renew his pawnbroker's permit.

The court found that the examiner submitted a written report containing a summary of the evidence considered, findings, conclusions and recommendations, and a proposed decision that the applications be denied, with a statement of the examiner's reasons therefor; that there was substantial evidence in the light of the whole record to support the findings of the examiner and the board that the renewal of the three permits would not comport with the public welfare and that petitioner was not a fit and proper person to receive said renewals; that the action of the board in denying the applications was not arbitrary, unreasonable, or contrary to the evidence or findings.

Appellant contends that the board did not make sufficient findings of fact as required by law; and that the decision of the board is not supported by the evidence.

Police Officer Benn, an investigator for the board, testified at the hearing before the examiner that Daniel Couron had complained that he had been overcharged for interest on three rings he had pawned at appellant's pawn shop at 553 South Main Street, Los Angeles; on December 28, 1954, Officers Benn and Scroggins met Couron and Mr. Engel outside the shop; then the officers followed Couron and Engel into the shop; Couron asked appellant how much he owed on the unredeemed pledges; appellant said, "That will be $37.00, which includes interest"; Couron said that he paid $4.00 interest on December 6; appellant said, "Well, you still owe $37.00 for the redemption of the three rings"; Couron paid $37 to appellant; then the officers identified themselves, and appellant said: "I got nothing to say. You got me. All the pawnbrokers are doing things—I have read the rules of the Police Commission and know the pawnbrokers orders. I also know what the legal charges are relative to pawnbrokers." Officer Benn testified further that in checking over the pawn records of appellant he found a pawn ticket for $20 that had the name Esther Hallis on it (the ticket was received in evidence); the ticket had been issued on May 10, 1954; on the back of the ticket there were dates and amounts as follows: June 16, $1.00; July 16, 1954, $1.00; August 10, 1954, $1.00; the word "polished" is stamped on the front of the ticket, and the figures "2.00" are written after that word; appellant told him that the entries on the back of that ticket indicated the payment of interest; he (witness) could not find Esther Hallis.

Mary Clark testified that she pawned a watch at appellant's pawnshop on September 28, 1954, for $5.00; the lady at the pawnshop told her that the interest would be $1.00 a month; she paid $1.00 interest in October and each month thereafter until the last time she saw appellant (February, 1955); about December, 1954, she pawned three rings there for $10; she also paid $1.00 a month interest on that loan; each time she paid interest (after the first two times) the lady at appellant's shop took the two pawn tickets and issued new ones; in February, 1955, when she paid $2.00 to appellant, she told him that she was not charged like that in Long Beach—that she was charged only fifty cents there; appellant said, "We're not in Long Beach"; she asked him why he gave a new ticket each time; he said that it was better for his bookkeeping, and "We do our business our way"; then he threw "50 cents back" at her; he gave her two new pawn tickets, dated February 15, 1955 (received in evidence as Exhibit III), in the

amounts of $5.00 and $10 respectively; she never redeemed the watch.

The pawn ticket (for the watch), issued to Mary Clark on September 28, 1954, was received in evidence. Stamped words and figures on that ticket are: "Redeemed Oct 27 1954."

Appellant testified that he told Couron that he owed $37 on the pawn transaction; Couron paid $37; thereafter appellant determined that the correct amount was a great deal less; he did not knowingly make the overcharge. He also testified that he did not remember Mary Clark; his records do not indicate a pawn of three rings by her prior to February 15, 1955; his records show that she paid $1.00 on October 27, 1954; he does not consider any payment as interest until the final adjustment or until the merchandise is redeemed. He also testified that Esther Hallis had redeemed her merchandise in September; an adjustment was made in her matter; he collected for polishing service; she was not charged more than fifty cents a month as interest.

The court found that section 89 of article VI of the charter of the city of Los Angeles provides that the city council shall prescribe by ordinance for procedure for the appointment of examiners, by boards, to conduct any investigation or hearing, and submit his report, giving his conclusions and recommendations in writing stating briefly his reasons therefor, and that each board may adopt, reject or modify the report of any examiner in whole or in part. ▇ The court takes judicial notice of the provisions of that charter. (*Coen* v. *City of Los Angeles*, 70 Cal.App. 752, 762 [234 P. 426]; *Thompson* v. *City of Los Angeles*, 82 Cal.App.2d 45, 47 [185 P.2d 393].) Section 9 of ordinance Number 95338 of the city of Los Angeles provides that the examiner shall submit a written report to the board, containing a brief summary of the evidence considered and stating the examiner's conclusions and recommendations, and if the matter is then ready for decision, containing a proposed decision, in such form that it may be adopted by the board as its decision in the case, and a brief statement of the examiner's reasons therefor. The ordinance was not introduced in evidence at the hearing before the examiner, but it was attached (as Exhibit C) to the board's answer to the petition for a writ of mandate. Petitioner did not deny the existence of the ordinance. The court found that the ordinance provided as hereinabove stated. The examiner submitted a report to the board in accordance with the provisions of the ordinance. Appellant asserts, however, as above stated, that there were no findings of fact in the report. It is to be

noted that the ordinance does not state expressly that the hearing examiner is required to make findings.

■ In *Swars* v. *Council of City of Vallejo,* 33 Cal.2d 867 [206 P.2d 355], it was said at page 872: "Although administrative findings must conform to the statutes governing the particular agency, they need not be stated with the formality required in judicial proceedings." (See also *Temescal Water Co.* v. *Department Public Works,* 44 Cal.2d 90, 101-102 [280 P.2d 1].) ■ In *Swars* v. *Council of City of Vallejo, supra,* it was also said at page 872: "In connection with the action of an administrative board, the fact that certain action is taken or recommendation made may raise a presumption that the existence of the necessary facts was ascertained and found."

The hearing examiner (officer) stated in his report: "The Hearing Officer is of the firm conviction, from the weight of the testimony, that Mr. Sobo [appellant] charged usurious interest knowingly. This Hearing Officer feels that the complainant [investigator for the board] proved each and every allegation in paragraph III of the complaint." Paragraph III of each complaint, as above shown, contained the charges against appellant. The charges in that paragraph of each complaint were substantially the same, except that in the complaint regarding the pawnbroker's permit it was alleged that he did not keep an accurate record of articles pawned, and in the two complaints regarding secondhand permits it was alleged that he did not keep accurate records of articles purchased. Paragraph III of each of the three complaints (except as just noted) alleged, in effect, that appellant was not a fit and proper person to be a pawnbroker or secondhand dealer; he committed petty theft; and he charged excessive interest. Since the charges in the complaints were substantially the same, the finding that the charges in the "complaint" were proved should be regarded as applying to the complaints.

■ The hearing examiner also stated in his report: "By trick of the pawnbroker and insufficient force of people to closely check the work, she [Mrs. Clark] pays $1.00 per month interest. The character and conduct of this type pawnbroker does not comport with General Public Welfare. The character of those of this type does not warrant a permit of any type by this Board." Those statements in the report of the examiner were sufficient as findings, even though the report did not label or designate them as findings. It appears from those statements that the examiner found that appellant charged usurious interest knowingly; and (as alleged in para-

graph III of the complaint) he was not a fit and proper person to engage in the pawnbroker or secondhand business; those businesses as carried on by him did not comport with public welfare; he committed petty theft; he charged excessive interest; and he did not keep accurate records of articles pawned or purchased.

It is to be noted also that appellant alleged in his petition for a writ of mandate: "That under the aforesaid ordinances [No. 95338, § 24.01], no organization, person or corporation can operate as a secondhand jewelry dealer or as a general secondhand dealer dealing in secondhand jewelry or in general secondhand merchandise without first having received a permit in writing so to do from respondent [board]." It thus appears, irrespective of the failure to introduce the ordinance in evidence at the hearing, that appellant considered that there was an ordinance requiring him to have a permit to operate a secondhand business. ▮ When there is such an ordinance as that alleged by appellant, the board has power to determine whether an applicant is a fit and proper person to conduct the business for which he seeks a permit. In *Zemansky* v. *Board of Police Commrs.*, 61 Cal.App.2d 450 [143 P.2d 361], it was said at page 453: "[W]hen by ordinance it is provided that a license shall not be issued until a permit has been granted by the Board of Police Commissioners, said board is vested with the power to determine whether the applicant is a fit and proper person to be permitted to conduct the business for which he seeks a license. . . . It is a fact, of which courts take judicial notice, that second-hand stores and pawn shops constitute a ready and customary outlet for stolen property [citation], which indicates that such businesses should be conducted by persons who are above suspicion."

Appellant concedes that the evidence was sufficient to support the order of the board denying a renewal of his pawnbroker's permit. He contends, however, as above stated, that the decision of the board denying renewals of his secondhand permits is not supported by the evidence. His argument is to the effect that all the evidence pertained to his conduct as a pawnbroker and not to his conduct as a secondhand dealer; that there was no evidence of wrongdoing in the operation of his secondhand business, and consequently there was no evidence upon which to base an order denying a renewal of his secondhand permits.

▮ It is true that the finding that appellant committed petty theft was based upon appellant's conduct as a pawnbroker. That, of course, was a finding that he was dishonest,

as a licensee of the board, in dealing with the public. Even though that dishonesty related to a transaction as a pawnbroker, the dishonesty would be a material consideration in determining appellant's moral fitness to have a permit as a secondhand dealer. The hearing examiner and the board were justified in considering that dishonest transaction, as a pawnbroker, in determining appellant's applications for permits to conduct a secondhand jewelry business and a general secondhand business. ■ Other evidence considered by the examiner and the board with reference to the secondhand permits related to alleged violations of rules which require the keeping of accurate records of articles purchased. The trial court, in its formal findings, did not make an express finding with respect to the matter of keeping records. In its formal findings, the court did not find that the evidence was insufficient to support the finding of the board that appellant did not keep accurate records. In a ''Memorandum to Counsel,'' the trial judge stated that the rules with reference to the matter of keeping records were not offered in evidence (before the examiner) and were not before the court; and that there was no evidence to support the charge that accurate records were not kept. Although that finding, in the memorandum, is not in the formal findings of the court, it is a declaration of the court that the charge with reference to the records is not supported by the evidence. Since this is a review of an administrative proceeding, and the trial court has declared in effect that it is not true that appellant failed to keep accurate records, this court should, under the circumstances here, give consideration to that declaration or finding of the court. Apparently, the board in determining that permits for the secondhand businesses should not be renewed gave consideration to its own finding that appellant did not keep accurate records of articles purchased. It appearing that that finding of the board is not supported by the evidence, a question arises as to whether the board would have fixed the same penalty, i. e., denial of renewal of permits for the secondhand businesses, if it had not found that appellant failed to keep accurate records. This court cannot make that determination. In *Bonham* v. *McConnell*, 45 Cal.2d 304 [288 P.2d 502], the insurance commissioner revoked Bonham's licenses as an insurance broker and agent upon making 15 findings that the broker was guilty of misconduct, consisting of wilfully inserting false answers in applications for insurance and knowingly misrepresenting the terms of insurance policies. In that case the superior court found that three of the 15 findings

were not supported by the evidence, but upheld 12 of the findings and concluded that they were sufficient to sustain the revocation. The Supreme Court said at page 305: "There is no claim that the wrongdoing of which the court found Bonham guilty is not established by the evidence or is not sufficient to warrant revocation of his licenses. The sole question is whether the court erred in failing to remand the case to the commissioner for reconsideration of the penalty to be imposed." The court stated further therein at page 306: "He [commissioner] should not be precluded from exercising his discretion either initially or where, as here, some of his findings of misconduct are upheld on judicial review and others are not. Where some of the findings are not supported by the evidence, it is obvious that his discretion has been exercised under a misconception as to the extent of the licensee's misconduct. . . . The decisions involving this problem have generally adopted the practice of directing the administrative agency to reconsider the penalty to be imposed. [Citations.] We are of the view that orderly procedure will be preserved, without working a hardship upon anyone involved, by remanding this type of case to the administrative official who has been empowered to act in matters of discipline so that he may reconsider the penalty to be imposed." In the present case the denial of the applications for renewal of licenses is in practical effect similar to revocation of a license. Since the trial court in the present case has found that one of the findings of the board, namely, failure to keep accurate records, is not supported by the evidence, the matter should be referred to the board for reconsideration of its order denying the applications for renewal of secondhand licenses, and for consideration of the order that should be made in view of the trial court's finding that the board's finding regarding failure to keep accurate records is not supported by the evidence.

The judgment is reversed with the direction that the trial court issue a writ commanding the board to vacate its order denying renewal of secondhand permits and to proceed further only as to the matter of making an order, regarding the applications for renewal of secondhand permits, based upon the findings of the board heretofore made, except that portion of the findings which is to the effect that appellant did not keep accurate records of articles purchased. Each party to pay his own costs on appeal.

Shinn, P. J., and Vallée, J., concurred.