[Civ. No. 24179.   Second Dist., Div. One.   Sept. 1, 1961.]

WILLARD L. STRODE, M.D., Appellant, v. BOARD
OF MEDICAL EXAMINERS et al., Respondents.

Van Dyke and Ritchie and Graham A. Ritchie for Appellant.

Stanley Mosk, Attorney General, and Matthew M. Kearney, Deputy Attorney General, for Respondents.

LILLIE, J.—Appellant is licensed to practice medicine and surgery in the State of California. By accusation filed by the State Board of Medical Examiners he was charged with three counts of unprofessional conduct relative to the use and dispensation of drugs, and a prior disciplinary action; at the hearing before the hearing officer on February 3, 1958, he appeared in propria persona and stipulated to the truth of "all statements of fact" in the allegation; the hearing was devoted solely to the presentation of evidence in mitigation of the charges. Thereafter, the proposed decision of the hearing officer was submitted to the board. Appellant then secured counsel and requested permission to appear before the board for the limited purpose of introducing additional evidence by way of mitigation. The board denied it but did not adopt the proposed decision and referred the case back to the same hearing officer directing him to hear the additional evidence and to prepare in accord with subdivision (b), section 11517, Government Code, a proposed decision based upon the additional evidence and the record in the prior hearing. At the second hearing before the hearing officer, on April 5, 1958, further evidence in mitigation was introduced and the matter argued on its merits. On May 13, 1958, the hearing officer submitted his proposed decision to the board; therein he determined that appellant's conduct was contrary to certain sections of the Business and Professions Code and proposed his license be revoked. The proposed decision was adopted by the board on June 30, 1958; the board then served upon appellant a copy of its decision to which was attached a copy of the proposed decision. Obtaining new counsel, appellant filed a petition for reconsideration with the board, which it denied; he then filed a petition for writ of mandate. The matter was heard in the trial court March 25, 1959; eight doctors testified for appellant. On May 21, 1959, it filed a memorandum decision; on June 17, 1959, it denied appellant's motion to reopen the case after submission. Judgment was entered August 5, 1959, denying the writ; on August 31, 1959, appellant's motion to vacate the judgment and enter a different judgment or for new trial was denied. The within appeal is from the judgment and the orders of June 17 and August 31.

By way of stipulation the following facts were admitted by appellant before the hearing officer on February 3, 1958: On April 11, 1953, the board revoked appellant's certificate to practice, the order was stayed for three years and he was

placed on probation; on August 23, 1954, the probationary terms were modified by removing the restriction on his narcotic privileges; on April 11, 1956, he completed probation. From December 17, 1956, to May 19, 1957, appellant dispensed 111 morphine sulphate solution $\frac{1}{4}$ c.c. tablets, 417 dolophine 5 mg. tablets and 530 dolophine 10 mg. tablets without making a record of each transaction showing the name of the patient, date, character, quantity of narcotic involved, pathology and purpose, and personally used said narcotics; between December 17, 1956, and May 19, 1957, appellant was addicted to the use of the narcotics, morphine sulphate and dolophine. Between September 21, 1956, and April 15, 1957, appellant issued 38 prescriptions for narcotics (morphine sulphate and dolophine), which narcotics and prescriptions were not for the persons named therein and such persons were not under his treatment; and all or a portion of the narcotics in each instance were actually secured for and used by him for his own use. On May 23, 1957, appellant was convicted upon his plea of guilty of four counts of violation of section 11164 and one count of violation of sections 11225, 11226, Health and Safety Code, in the San Diego Municipal Court.

With reference to the validity of the administrative procedure, appellant argues that when the board does not adopt the hearing officer's proposed decision, reassigns the case to a hearing officer for additional testimony and thereafter receives the proposed decision, *prior* to adopting the same, section 11517, subdivision (c), Government Code, requires (1) the respondent be furnished with a copy of the proposed decision, (2) respondent be afforded the opportunity to present oral or written argument to the board, and (3) the board to familiarize itself with the record.

Initially the board assigned the matter to a hearing officer alone; the board itself neither heard nor decided the case; its ultimate act was the adoption of the proposed decision as its own. Section 11517, Government Code, in pertinent part provides: " (b) If a contested case is heard by a hearing officer alone, he shall prepare a proposed decision in such form that it may be adopted as the decision in the case. A copy of the proposed decision shall be filed by the agency as a public record and a copy of the proposed decision shall be served by the agency on each party in the case and his attorney. The agency itself may adopt the proposed decision in its entirety, or may reduce the proposed penalty and adopt the balance of

the proposed decision. (c) If the proposed decision is not adopted as provided in subdivision (b), the agency itself may decide the case upon the record, including the transcript, with or without taking additional evidence, or may refer the case to the same or another hearing officer to take additional evidence. If the case is so assigned to a hearing officer he shall prepare a proposed decision as provided in subdivision (b) upon the additional evidence and the transcript and other papers which are part of the record of the prior hearing. A copy of such proposed decision shall be furnished to each party and his attorney as prescribed by subdivision (b). The agency itself shall decide no case provided for in this subdivision without affording the parties the opportunity to present either oral or written argument before the agency itself. If additional oral evidence is introduced before the agency itself no agency member may vote unless he heard the additional oral evidence.''

■ Subdivision (c) provides for two procedures if the board does not adopt a proposed decision—that wherein the board refers the case back to the hearing officer for hearing; and the other, wherein the agency itself keeps the case and hears and decides it. The purpose and language of the Administrative Procedure Act (Gov. Code, §§ 11500 et seq.) reflect that these two procedures were intended to be and are separate and distinct. Throughout section 11517, the term ''agency itself'' is distinguished from the term ''hearing officer'' to whom the agency has delegated its power to act. There is nothing in the procedure wherein the board refers the case back to the hearing officer under subdivision (c) and (b) that requires a copy of the proposed decision to be served on respondent prior to its adoption by the board; there is nothing therein that permits a respondent to argue orally or in writing before the board; and there is no requirement that the board must familiarize itself with the transcript of the hearing before the hearing officer. To read such requirements into this procedure appellant resorts to that used when, after rejecting a proposed decision, the board *itself* hears and decides the case; therein subdivision (c) specifically provides that if the board itself chooses to hear and decide the case, it must do so upon the record, including the transcript, with or without taking additional evidence and afford the parties the opportunity to present either oral or written argument before the board. Thus the right to present oral or written argument

before the board and the necessity for it to read the record, refer solely to the situation in which the "agency itself" decides the case instead of referring it back to the hearing officer. Appellant interprets the words "decide no case" in subdivision (c) to include the board's act of adopting the hearing officer's proposed decision as well as the act of the board of hearing and determining the issues where it decides the case itself. But it is clear from section 11517 that it is only when the agency itself hears the case, it decides it. See *Frost* v. *State Personnel Board*, 190 Cal.App.2d 1 [11 Cal. Rptr. 718], and the Tenth Biennial Report of the Judicial Council, part two, cited therein, relative to the adjudicative power under section 11517.

Appellant herein was served with a copy of the board's decision to which was attached a copy of the proposed decision. Although section 11517 provides that a copy of the proposed decision must be served, it is silent concerning when it must be done; but time of service seems to be immaterial for there is no provision for argument before the board before it adopts the proposed decision. Appellant relies upon *Hohreiter* v. *Garrison* (1947), 81 Cal.App.2d 384 [184 P.2d 323], to the effect that under subdivision (c) if the agency does not want to adopt the proposed decision each party must be furnished a copy thereof; but this point is no longer controlling, for thereafter, in 1955 the Legislature, amending section 11517, subdivision (c), eliminated the phrase upon which the ruling was based.

However, the court in *Dami* v. *Department of Alcoholic Beverage Control*, 176 Cal.App.2d 144 [1 Cal.Rptr. 213], ruled against the same contentions appellant herein proposes. While the *Dami* case involves a hearing by the hearing officer under subdivision (b), in light of the fact that subdivision (c) provides that if the board reassigns the case to a hearing officer "he shall prepare a proposed decision as provided in subdivision (b)" and "[a] copy of such proposed decision shall be furnished ... as prescribed by subdivision (b)," the board's order of reassignment to the hearing officer herein directed him "to prepare a proposed decision pursuant to the provisions of Section 11517(b)," and the hearing officer acted accordingly, we deem the language in that case to be controlling. Therein, the Department of Alcoholic Beverages Control did not serve a copy of the proposed decision upon Dami prior to the time it was adopted by the department, but as in

the instant case, served it upon him simultaneously with the actual decision. Said the court at page 147: "We believe that neither the legislative history nor the statutory language compels prior service of a hearing officer's proposed decision in a case in which the department adopts the prior as the ultimate adjudication [citing subds. (b) and (c), Gov. Code, § 11517]." And again at page 148: "Nor does the language of the subdivision contain any specific provision for such prior service. Indeed the purport of the subdivision gives the reason for the omission. In the first place, the prior service would be meaningless unless the statute granted a concomitant opportunity for prior argument in opposition to the proposed decision. Yet the Legislature specifically excluded provision for such argument in this subdivision while it included it in subdivision (c), which covers a situation in which the agency refers 'the case to the same or another hearing officer to take *additional evidence*' [italics added]. Apparently the Legislature omitted the mandate for preliminary service because in the situation in which the agency accepted the proposed decision it saw no occasion for further argument." From the foregoing and a reading of section 11517, it is obvious that the *"further* argument before final rendition of the decision" suggested by the court at page 150, refers not to oral or written argument before the *board* when the case is reassigned to a hearing officer, but to further argument before the hearing officer after "additional evidence" has been received. In the instant case, the hearing officer heard argument of appellant's counsel. Relative to Masterson's affidavit which asserted that originally in Assembly Bill 2222, to amend section 11517, there was a requirement of service of the proposed decision at least ten days before the agency adopts the same and that the ten-day requirement was omitted but there was no intent to remove the requirement of prior service, the court said at page 148, "If the Legislature meant to reject the time proviso only and to save the general requirement as to prior service, it could easily have said just that . . . We must conclude this history shows no legislative intention to require prior service of the proposed decision."

Nor in a case assigned to a hearing officer does section 11517 require the board to read the record; it provides only that the board shall "adopt the proposed decision," or "reduce the proposed penalty and adopt the balance of the proposed decision." (Subd. (b).) It is only when the agency

"itself" decides the case it must do so "upon the record, including the transcript, with or without taking additional evidence." (Subd. (c).) Returning to *Hohreiter* v. *Garrison,* 81 Cal.App.2d 384 [184 P.2d 323], the Insurance Commissioner adopted the proposed decision without reading the record of the hearing before the hearing officer; appellant argued he was deprived of due process. Said the court at pages 396, 399: "[I]n cases where the hearing officer sits alone, the administrative agency may, by adopting his proposed decision, in legal effect, and with statutory permission, delegate the power to decide to the hearing officer . . . We conclude this point with the holding that section 11517, properly interpreted, provides that where the hearing officer acts alone the agency may adopt his decision without reading or otherwise familiarizing itself with the record." Citing the rule that it is not a denial of due process for the commission to base its award on a report of a referee although it does not review the record, are *National Auto & Cas. Ins. Co.* v. *Industrial Acc. Comm.,* 34 Cal.2d 20 [206 P.2d 841], *Cooper* v. *State Board of Medical Examiners,* 35 Cal.2d 242 [217 P.2d 630, 18 A.L.R.2d 593], and *Dami* v. *Department of Alcoholic Beverage Control,* 176 Cal.App.2d 144 [1 Cal.Rptr. 213], citing *Hohreiter* v. *Garrison,* 81 Cal.App.2d 384 [184 P.2d 323].

Appellant cites *Morgan* v. *United States,* 298 U. S. 468 [56 S.Ct. 906, 80 L.Ed. 1288], to the effect that "he who decides must hear." The court in *Hohreiter* v. *Garrison, supra,* discussed the *Morgan* cases (298 U. S. 468) and (304 U. S. 1 [58 S.Ct. 773, 82 L.Ed. 1129]) thusly: "But they cannot be interpreted to mean that, where a fair trial is required by the statute before a fair and impartial hearing officer who is required by the statute to weigh and appraise the evidence and to prepare a proposed decision, the Legislature cannot provide that the administrative agency may adopt his proposed decision without reading the record . . . In the federal statute there involved there was no statutory officer clothed with statutory powers comparable to a hearing officer as provided in section 11517 of our Government Code" (p. 401).

Nor is there merit to appellant's claim that he was deprived of due process because of the board's denial of his petition for reconsideration. Appellant filed his petition with the board eight days before the 30-day period, during which reconsideration could be ordered, expired. Seven members failed to vote to grant the petition and it was denied by operation of law under section 2119, Business and Professions

Code. The board is composed of ten members; six received and read the petition; four did not receive a copy until after entry of the order; of the six, four voted to grant, two to deny the petition. Appellant argues somewhat obscurely that under section 11521, Government Code, a majority of those acting should prevail and that four votes were sufficient. Under no theory is this position tenable.

Section 2119 provides: ''The board may adopt, amend, or repeal, in accordance with the provisions of the Administrative Procedure Act, such rules as may be reasonably necessary to enable it to carry into effect the provisions of this chapter. It shall require the affirmative vote of seven members to carry any motion or resolution, to adopt any rule, to pass any measure, or to authorize the issuance of any certificate under this chapter.'' Section 11521 provides '' (a) The agency itself may order a reconsideration of all or part of the case on its own motion or on petition of any party. The power to order a reconsideration shall expire 30 days after the delivery or mailing of a decision to respondent . . . If no action is taken on a petition within the time allowed for ordering reconsideration the petition shall be deemed denied.''

Section 11521 is silent concerning the number of votes necessary to order a reconsideration; it merely provides that inaction alone may constitute a denial. However, since section 11521 is incorporated by reference into chapter 5, Business and Professions Code (§ 2360), it must be interpreted with section 2119, which requires the affirmative vote of seven members for board action.

Appellant did not within 30 days receive seven affirmative votes for reconsideration; he did not receive a majority vote of six; the ''action'' contemplated in section 11521, in any event, means action of the board, not that of individual members constituting less than seven; under either or both sections board inaction alone disposes of a petition for reconsideration.

Nor was appellant denied any of his constitutional rights because all members of the board, for one reason or another, did not act. Respondent has no constitutional right to petition for reconsideration in the first instance, and the order reconsidering is discretionary with the board under sections 2119 and 11519.

Appellant argues that the findings of the hearing officer do not support the conclusion his conduct was contrary

to section 2391, Business and Professions Code; and in any event the hearing officer did not find him to be an "habitue or addict" under section 2391. While we believe there is merit to appellant's position, and the lack of specific finding that he is an habitue or addict to be immaterial, we point out the existence of a stipulation of fact and that appellant understood the same and its effect to show that neither the appellant was prejudiced nor was the board misled by the erroneous conclusion that appellant's conduct violated section 2391.

The first charge alleged that during a certain period appellant dispensed 111 morphine sulphate solution ¼ c.c. tablets, 417 dolophine 5 mg. tablets and 430 dolophine 10 mg. tablets, without making a record of each transaction, and that all of the narcotics were administered and furnished by appellant for his own use; and "that during said period respondent was addicted to the use of the aforementioned narcotics." (Par. III.) Conceding that at the hearing on February 3, 1958, he stipulated to "all statements of fact" contained in the accusation, he now contends he should not be bound because he was not then represented by counsel, did not understand the effect of it, thought he was merely "pleading guilty," and did not weigh and consider its effect relative "to the fact of addiction."

That appellant entered into a stipulation without counsel does not alone excuse him from its terms (*Griswold* v. *Department of Alcoholic Beverage Control,* 141 Cal.App.2d 807 [297 P.2d 762]), nor would the belief that he was merely pleading guilty (*People* v. *Emigh,* 174 Cal.App.2d 392 [344 P.2d 851]; *People* v. *Cabral,* 128 Cal.App.2d 693 [275 P.2d 927]); and his present claim that the allegation he was "addicted to the use of narcotics" (par. III) is a conclusion and not one of ultimate fact has no merit in light of his own reference "to the fact of addiction" (A.O.B., p. 27), his reliance upon the stipulation offering no evidence on the issue of "addiction," and his presentation of evidence in mitigation before the hearing officer and the lower court.

His contention that he did not understand the nature and effect of the stipulation (raised for the first time on appeal) overlooks the record. Even before the hearing, appellant decided to question no fact contained in the charge and offer no evidence thereon (letter of November 14, 1957); at the hearing on February 3, 1958, Mr. Mamakos, attorney for the board, offered to stipulate "that all the allegations in the accusation are true," appellant accepted it but only after the

hearing officer meticulously explained the nature of a stipulation, that no evidence would be offered to prove the facts and based thereon his license could be suspended or revoked. In the face of the record, the fact appellant was familiar with board and court proceedings, that he at no time before the hearing officer sought to withdraw from his stipulation, and that he did not raise any issue concerning it in his petition for mandate, or at the trial, it appears that he intentionally and deliberately entered into the stipulation which he cannot now disregard. (*Thayer* v. *Board of Osteopathic Examiners*, 157 Cal.App.2d 4 [320 P.2d 28].)

The accusation contains three separate charges. It is alleged in the first that appellant was guilty of unprofessional conduct contrary to provisions of sections 2361, 2391 and 2391.5, Business and Professions Code, and certain sections of the Health and Safety Code, in that he dispensed certain narcotics—111 morphine sulphate solution $\frac{1}{4}$ c.c. tablets and 947 dolophine tablets—regulated by sections 11001 and 11002, Health and Safety Code, without making a record of each transaction, and in that the said narcotics were administered and furnished by appellant "for his own use," and that he was "addicted" to their use (par. III). The second alleged and the hearing officer concluded appellant's unprofessional conduct to be contrary to sections 2361 and 2384, (par. II); the third, conduct contrary to sections 2361 and 2391.5.

Referring to the first, the hearing officer found that appellant had dispensed the narcotics without making a record of each transaction (§ 2391.5) and that he "personally used said narcotics" (par. III, proposed decision); and concluded that he had been guilty of unprofessional conduct as defined by sections 2391 and 2391.5. Appellant was neither charged with unprofessional conduct contrary to section 2390, Business and Professions Code, nor adjudged thereunder; he was charged only with unprofessional conduct contrary to sections 2391 and 2391.5. There is here no contention that the charge and conclusion of the hearing officer in connection with section 2391.5 are not proper. However, appellant claims that inasmuch as the hearing officer found his misconduct to be that of "self use" of narcotics, the finding can support only a conclusion of unprofessional conduct contrary to section 2390, with which he was not charged, and that while he may have been an addict, his self administration of the narcotics does not constitute unprofessional conduct under section 2391, in that the latter applies only to cases in which the physician

furnishes narcotics to others who are addicts. With this contention we agree.

Section 2390, provides: "*The use* or prescribing for *or administering to himself,* of cocaine, opium, *morphine,* codeine, heroin, alpha eucaine, beta eucaine, chloral hydrate or any of the salts, derivatives or compounds of the foregoing substances; *or the use* of paraldehyde or barbituric acid, their salts, compounds or derivatives, or *of any narcotic or dangerous drug regulated by the statutes of this State,* or of alcoholic beverages *to the extent, or in such manner as to be dangerous or injurious to a person holding a certificate under this chapter, or to any other person or to the public, or to the extent that such use impairs the ability of such person so holding such a certificate to conduct with safety to the public the practice authorized by such certificate* or the conviction of more than one misdemeanor or any felony involving the use, consumption or self administration of any of the substances referred to in this section or any combination thereof, *constitutes unprofessional conduct within the meaning* of this chapter." (Emphasis added to indicate pertinent portion.) Section 2391 provides that "the prescribing, selling, furnishing, giving away or administering . . . any of the drugs or compounds mentioned in section 2390 to a habitue or addict constitutes unprofessional conduct . . ."

Section 2390 deals with self-administration of narcotics by a licensee, physician in this case; section 2391 deals with administration of narcotics by a physician to a "habitue or addict." The record shows without question that appellant has supplied narcotics to no person other than to himself; and it is apparent from a reading of sections 2390 and 2391, that 2391 does not, and was not intended to, apply in a case of self-use even though the physician be an addict. The use of narcotics by a physician is the subject of section 2390 to which different rules apply. Section 2391 applies to a case in which the physician furnishes narcotics to someone else who is an addict. Under the first part of section 2390, there are certain specified narcotics, including morphine, which are apparently so dangerous that their use alone by a licensee, without any other factor, constitutes unprofessional conduct; in the remaining portion of the section, the Legislature has listed others which would include dolophine, the use of which constitutes unprofessional conduct upon a further showing their use by a licensee (physician) is such as to be dangerous or injurious to him or any other person or the public, or im-

pairs his ability to conduct with safety to the public his practice. Under this section the physician might or might not be an addict. The fact of addiction is not the ultimate test of unprofessional conduct under section 2390 but rather the use of certain narcotics by him and/or the extent of that use; we find no indication in either section, that the Legislature intended that section 2391 apply to a situation where a licensee, an addict, was administering the drugs to himself.

The evidence and the hearing officer's finding (par. III) having specifically pointed up that appellant "personally used said narcotics," it does not support the conclusion that he was guilty of unprofessional conduct as defined in section 2391 (par. I). However, in holding that the hearing officer's conclusion of law in connection with part of the first charge is erroneous, we perceive no necessity for a remand to the board for reconsideration of the penalty under the cases cited by appellant (*Sobo* v. *Board of Police Commissioners,* 145 Cal.App.2d 783 [303 P.2d 104]; *Bonham* v. *McConnell,* 45 Cal.2d 304 [288 P.2d 502]; *Mast* v. *State Board of Optometry,* 139 Cal.App.2d 78 [293 P.2d 148] and *Cooper* v. *State Board of Medical Examiners,* 35 Cal.2d 242 [217 P.2d 630, 18 A.L.R.2d 593]). Those authorities refer only to a situation in which one or more of multiple charges of misconduct are unsupported by the *evidence*—wherein part of the administrative findings concerning the licensee's conduct are struck down. We do not here have a situation in which the findings are erroneous or unsupported by the evidence; appellant himself stipulated that all of the facts set forth in the findings were true; nor does he question the findings themselves. The only error is the hearing officer's conclusion of law in connection with a part of one charge—that appellant's conduct violated section 2391. However, it is apparent that the conclusion is not necessary to sustain the decision and penalty imposed by the board for all findings of fact of the hearing officer stand unimpeached. Unnecessary to sustain the decision or penalty, the conclusion that appellant's conduct was contrary to section 2391 is at most surplusage and harmless error. In *Goldsmith* v. *California State Board of Pharmacy,* 191 Cal.App.2d 866 [13 Cal.Rptr. 139], the court held, that a surplus conclusion of law which is unnecessary to sustain the judgment is harmless error. The situation therein was similar to that in the case at bar. "The trial judge found that the appellant furnished a dangerous drug to Denkin without a prescription on April 10, 1957. The judge con-

cluded as a matter of law that appellant, by such conduct, violated the provisions of Business and Professions Code, section 4227 (furnishing a dangerous drug without a prescription) and section 4228 (furnishing a dangerous drug upon a prescription, but in a container improperly marked). Clearly the appellant could not violate section 4228 of the Business and Professions Code by furnishing a dangerous drug without a prescription. It is perfectly clear, however, that appellant did violate the provisions of section 4227, Business and Professions Code, and it is further clear that the judgment is supported by proper findings of fact and conclusions of law and that the court was right in adjudging that appellant take nothing by his petition. (See *Stevinson Water District* v. *Roduner*, 36 Cal.2d 264, 271 [223 P.2d 209] ; *McNutt* v. *City of Los Angeles*, 187 Cal. 245, 249 [201 P. 592] ; *Davis* v. *Baugh*, 59 Cal. 568; *Hay* v. *Allen*, 112 Cal. App.2d 676, 681 [247 P.2d 94] ; *Hammond Lumber Co.* v. *Gordon*, 84 Cal.App. 701, 706 [258 P. 612].)'' [P. 875.]

Even in cases in which one or more of the findings must be stricken as unsupported by the evidence, a ''real doubt'' must arise ''from the record as to whether the agency would have inflicted the particular penalty had it realized that the evidence was not sufficient to support certain of the charges.'' *Steele* v. *Los Angeles County Civil Service Commission*, 166 Cal.App.2d 129, 139 [333 P.2d 171].) The findings of fact now are the same as when the board considered them—they then supported the overall conclusion of appellant's unprofessional conduct and the penalty imposed, and they do now. We see no reason for the Board to reconsider its penalty.

Nor as suggested by appellant could the board believe because of the hearing officer's conclusion of unprofessional conduct contrary to section 2391 that he had been trafficking in narcotics, inasmuch as the findings specifically stated in two separate and distinct places that the narcotics in question had been diverted to appellant's own use not to the use of any other person. Further even had appellant's conduct not been found to be contrary to section 2391, the fact of his self use would not have been eliminated from the findings for it is obvious that the narcotics he purportedly prescribed for others were actually used by him; also appellant assumed the entire case against him was intricately woven around his use of morphine sulphate and dolophine in presenting facts in mitigation, not only twice before the hearing officer but before the trial court.

For the reasons heretofore stated the judgment and order of August 31 are affirmed; the appeal from the order of June 17 is dismissed.

Wood, P. J., and Fourt, J., concurred.

A petition for a rehearing was denied September 20, 1961, and appellant's petition for a hearing by the Supreme Court was denied October 25, 1961.