[No. G038697. Fourth Dist., Div. Three. Jan. 4, 2008.]

EDWARD C. NORTON, Plaintiff and Appellant, v.
SAN BERNARDINO CITY UNIFIED SCHOOL DISTRICT, Defendant and
Respondent.

**COUNSEL**

Law Offices of Granowitz, White and Weber and Bradley R. White for Plaintiff and Appellant.

Cummings, McClorey, Davis & Acho, Alan C. Jablin and Sarah L. Overton for Defendant and Respondent.

**OPINION**

**FYBEL, J.—**

## INTRODUCTION

We hold Plaintiff Edward C. Norton must be reinstated to his former position as director of building services of defendant San Bernardino City Unified School District (the District), including his former duties, responsibilities and salary as director. We therefore direct issuance of a writ compelling the District to do so.

Norton was terminated from his employment as the District's director of building services based on misconduct alleged by the District. Norton appealed the District's decision pursuant to Education Code section 45305. After a lengthy administrative hearing, the appointed hearing officer determined that Norton had not engaged in the alleged misconduct with one exception.

Based on her findings, the hearing officer recommended that Norton's discipline be modified. She recommended he be suspended for one month without pay for the allegation of misconduct she found to be true, but that he

otherwise should "be reinstated to his position as Building Services Director" and receive backpay accordingly. The District's personnel commission adopted the hearing officer's recommendation. Norton then filed a verified petition for writ of mandate seeking full reinstatement to his former position and backpay, and the reversal of the administrative order imposing the one-month suspension. The trial court denied Norton's petition and entered judgment; Norton appealed.

We reverse the trial court's denial of Norton's request for an order compelling the District to fully reinstate his employment. Norton's requested relief was properly before the court. The court's judgment denies Norton's petition in full but also inconsistently states Norton shall "*be reinstated* and he receive all unpaid back pay, with interest and benefits, if they have not already been done." (Italics added.) The court reserved jurisdiction to decide on the amount of backpay owed, but not on reinstatement. Thus, the judgment is internally inconsistent and in error because it denies Norton's petition for reinstatement, but orders reinstatement. The judgment does not clearly state whether or not Norton had been reinstated.

The record contains unrefuted evidence the District failed to fully reinstate Norton to the former duties and responsibilities of his former position as building services director. Therefore, we remand the matter to the trial court to issue a writ of mandate compelling the District to reinstate Norton as described in the Disposition.

We affirm the trial court's denial of the petition's request to set aside Norton's one-month suspension. The personnel commission did not abuse its discretion by adopting the hearing officer's recommendation that Norton be suspended for one month without pay, based on evidence presented at the administrative hearing.

## FACTS[1]

The District hired Norton as director of building services in 1995. According to the District's job description, the position of building services director is supervised by the assistant superintendent of administrative services, and

---

[1] The facts contained in this part are based on the findings made by the administrative hearing officer appointed by the District's personnel commission following Norton's administrative appeal of his dismissal.

has duties and responsibilities including "plan[ning], organiz[ing] and direct[ing] the maintenance, operations, construction and building modifications activities of the Building Services Department, including painting, electrical, carpentry, metal and machines, groundskeeping, plumbing, custodial services and engineering design."

In January 2003, Norton directed the electronics and electrical shop supervisor, Gerry Barber, to look into purchasing equipment that would detect whether listening devices had been planted in the building services offices. Norton took this action after learning that confidential information discussed during managerial meetings had been leaked to nonmanagerial employees immediately after or during those meetings. Barber contacted James Weatherspoon, the owner of California Surveillance Systems, from whom he had previously purchased surveillance equipment for the District. On January 31, Norton, Barber, and Weatherspoon met regarding the purchase of a miniature bug detector. Norton wanted the purchase of the device kept confidential and asked if it could be described as something else on relevant documentation.

Weatherspoon referred to the miniature bug detector purchased by the District as a " 'monitor wall mount' " on the invoice, and Barber processed the subsequent requisition for a monitor wall mount in the amount of $159.39. Norton was never told how the miniature bug detector was described on the purchase requisition or invoice.

## PROCEDURAL BACKGROUND

On March 28, 2003, Norton was placed on administrative leave with pay pending an investigation. On June 11, Yolanda Ortega, the District's "Assistant Superintendent, Employee Relations," met with Norton to discuss several allegations of misconduct against him, five of which related to the purchase of the miniature bug detector.

On September 15, 2003, Norton received notice his employment with the District had been terminated, effective September 8, for engaging in the following types of misconduct in violation of "Personnel Commission Rule 6.25": (1) inability or unwillingness to perform the duties of the position in a competent, satisfactory manner; (2) insubordination; (3) "[d]iscourteous, offensive, or abusive conduct or language toward other employees, pupils or the public while on district time and/or while on district property and/or while performing any district function"; (4) dishonesty; (5) personal conduct

unbecoming an employee of the District; (6) falsifying information supplied to the District; (7) willful or persistent violation of school laws of the state or the rules and regulations of the District; (8) willful conduct tending to injure the public service; (9) "[t]heft or willful misuse or misappropriation of district property or aiding and abetting such theft or willful misuse or misappropriation of district property[,] or theft of private property while on district time and/or while on district property and/or while performing any district function or aiding and abetting such theft"; and (10) "[s]exual harassment or any other conduct prohibited by the District Policies on Nondiscrimination."

Norton appealed the District's decision to terminate his employment to the District's personnel commission under section 45305 of the Education Code. After conducting a six-day hearing, the administrative hearing officer, appointed by the personnel commission, issued a 42-page summary of findings and recommended decision. In her summary, the hearing officer concluded the only misconduct proven by the District was that Norton had been dishonest with regard to the paperwork involving the acquisition of the miniature bug detector and had indirectly falsified information given to the District. The hearing officer concluded the District failed to establish just cause for firing Norton because the purchase of the miniature bug detector in and of itself was not inappropriate. She recommended the personnel commission impose a "one month suspension without pay from September 8, 2003 to October 8, 2003 for [Norton's] act of dishonesty and falsification of a document related to the mini-bug detector." The hearing officer further recommended the "Personnel Commission order that Edward Norton be reinstated to his position as Building Services Director with back pay from October 9, 2003 to date of reinstatement."

In a letter dated June 16, 2004, Norton's counsel was informed the personnel commission had voted to adopt the hearing officer's summary of findings and recommended decision and, pursuant to Education Code section 45307, upon receipt of the personnel commission's written decision, the District's board "shall forthwith comply with the provisions thereof."

On September 14, 2004, Norton filed a verified petition for writ of mandate (the petition) seeking relief against the District in the form of two causes of action.[2] The first cause of action sought "an alternative or peremptory writ of

---

[2] We adopt the petition's use of the term "cause of action" in this opinion for purposes of consistency and clarity.

mandate directing and compelling [the District] to comply with the decision of the Personnel Commission by immediately reinstating [Norton] to his former position, and to award [Norton] full seniority, benefits, and any back pay found due as ordered by the commission with pre-judgment interest thereon." In the second cause of action, Norton challenged the one-month suspension without pay adopted by the personnel commission, pursuant to the hearing officer's recommendation, on the ground it was not supported by the evidence.

In December 2005, Norton filed a declaration in support of the petition, in which he stated that after receiving the personnel commission's June 16, 2004 letter adopting the hearing officer's findings and recommended decision, he received a letter from the District, dated June 17, 2004, informing him that he was being immediately placed back on administrative leave with pay, without explanation. Norton's declaration asserted that after he filed the petition in September 2004 and sent multiple written communications to the District demanding compliance with the personnel commission's decision, on June 15, 2005, Norton received a substantial portion of the backpay due to him, without interest. Norton stated he also had been denied the accrual of vacation benefits and incurred out-of-pocket expenses "in maintaining [his] health and dental insurance after the District stopped paying for same."

Norton's declaration further stated that on November 15, 2004, he returned to work for the District, but did not return to his former position. His declaration asserted, "[i]nstead, I was given a new job with a new supervisor. . . . The only thing which remained familiar was my official job title, but it was simply a nominal designation rather than a substantive or functional description of what I was expected to do. My old job was, at that time, had effectively been, and is now being performed by one Robert Leon, one of my former subordinates, who began serving as Acting Director of Building Services when and since I was first removed from my position in March, 2003." Norton asserted (1) he did not supervise anyone; (2) he had not otherwise been permitted to perform the job duties and responsibilities set forth in the written job description of the director of building services; (3) he had not been returned to his former office; (4) he had received very few assignments; and (5) those assignments were custodial in nature and primarily consisted of maintenance inspections.

The trial court denied the petition in full and judgment was entered accordingly. The judgment stated the District "did not abuse its discretion in suspending [Norton]'s employment for one month, without pay, for [Norton]'s act of dishonesty and falsification of a document," and Norton was to "be reinstated and he receive all unpaid back pay, with interest and benefits, if they have not already been done." The judgment further provided

that the trial court retain limited jurisdiction "for the sole purpose of ascertaining whether [Norton] has been fully paid his back pay, with interest and benefits."

Norton appealed.

## DISCUSSION

### I.

### THE TRIAL COURT ERRED BY FAILING TO ISSUE A WRIT COMPELLING THE DISTRICT TO REINSTATE NORTON TO HIS FORMER POSITION AS DIRECTOR OF BUILDING SERVICES.

Norton contends the trial court erred in ruling on the petition by failing to (1) find that the District had failed to reinstate him to his former position as required by the personnel commission's decision, and (2) issue a writ compelling the District to comply with the personnel commission's decision.

■ As discussed in detail *post,* we conclude the trial court erred by failing to decide the issue squarely before it—whether the District had complied with the personnel commission's decision to reinstate Norton to his former position. Notwithstanding the trial court's failure to make such a finding, the record shows, as a matter of law, the District has not reinstated Norton to his former position. Thus, the trial court erred by failing to issue a writ compelling the District to do so.

### A.

*The Trial Court Erred by Denying the Petition Without Deciding Whether Norton Had Been Reinstated to His Former Position and Paid Backpay Pursuant to the Personnel Commission's Decision.*

■ "A writ of mandate may be issued by any court to any inferior tribunal, corporation, board, or person, to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station, or to compel the admission of a party to the use and enjoyment of a right or office to which the party is entitled, and from which the party is unlawfully precluded by such inferior tribunal, corporation, board, or person." (Code Civ. Proc., § 1085, subd. (a).) "What is required to obtain writ relief is a showing by a petitioner of '(1) A clear, present and usually ministerial duty on the part of the respondent . . . ; and (2) a clear, present and beneficial right

in the petitioner to the performance of that duty . . . .' " (*Santa Clara County Counsel Attys. Assn. v. Woodside* (1994) 7 Cal.4th 525, 539–540 [28 Cal.Rptr.2d 617, 869 P.2d 1142].)[3]

"The availability of writ relief to compel a public agency to perform an act prescribed by law has long been recognized." (*Santa Clara County Counsel Attys. Assn. v. Woodside, supra,* 7 Cal.4th at p. 539; see, e.g., *Lomeli v. Department of Corrections* (2003) 108 Cal.App.4th 788, 790 [134 Cal.Rptr.2d 179] [appellate court affirmed trial court judgment directing issuance of peremptory writ of mandamus to compel public employer to comply with state personnel commission's order requiring it to reinstate employee to his former position and pay him backpay and benefits]; see also *Phillips v. County of Fresno* (1990) 225 Cal.App.3d 1240, 1248–1249 [277 Cal.Rptr. 531] [deputy sheriff's petition for writ of mandamus proper in seeking reinstatement, backpay and benefits].)[4]

In September 2004, the petition asserting the District failed to comply with the personnel commission's decision and requesting the trial court to compel the District to so comply was properly brought under section 1085, subdivision (a) of the Code of Civil Procedure. In his December 2005 declaration, Norton stated the District failed to fully reinstate him to his former position as required by the personnel commission's decision, even though it had placed him back on the payroll and restored his former title of director of building services. The declaration further showed the supervisory and managerial duties of his former position were being performed by someone else and he had been given only a few assignments which were "in the nature of custodial work."

---

[3] A writ of mandate "must be issued in all cases where there is not a plain, speedy, and adequate remedy, in the ordinary course of law. It must be issued upon the verified petition of the party beneficially interested." (Code Civ. Proc., § 1086.)

[4] Citing *McGill v. Regents of University of California* (1996) 44 Cal.App.4th 1776 [52 Cal.Rptr.2d 466], the District argues in the respondent's brief that an "ordinary writ of mandate" issued pursuant to Code of Civil Procedure section 1085 is inappropriate because "[t]he case at bar does not involve a quasi-legislative act which is reviewed by ordinary mandate." In *McGill,* the appellate court explained, "[u]sually, quasi-legislative acts are reviewed by ordinary mandate and quasi-judicial acts are reviewed by administrative mandate." (*McGill v. Regents of University of California, supra,* at p. 1785.) Although administrative mandate under Code of Civil Procedure section 1094.5 "is available 'only if the decision[] resulted from a "proceeding in which *by law:* 1) *a hearing is required to be given,* 2) evidence is required to be taken, and 3) discretion in the determination of facts is vested in the agency," ' " the court further stated, " '[o]rdinary mandate is used to review adjudicatory actions or decisions when the agency was not required to hold an evidentiary hearing.' " (*McGill v. Regents of University of California, supra,* at p. 1785.) The decision challenged in the first cause of action of the petition was the District's decision not to fully reinstate Norton to his former duties and responsibilities. That decision by the District was not reached following an evidentiary hearing, and therefore is subject to an ordinary writ of mandamus under section 1085.

The District opposed the petition, arguing it had complied with the personnel commission's decision. The District did not dispute the evidence produced by Norton showing he had been assigned different job duties and responsibilities since his reinstatement and no longer had any supervisory or managerial duties. Instead, the District argued Norton's new job duties and responsibilities are "extremely important."

The trial court denied the petition at the hearing. The court did not give its reason for rejecting Norton's first cause of action seeking full reinstatement, but stated, "if [Norton] has not been returned to his original position as was the hearing officer's direction and order, that is the order of the Court and he is to be paid all unpaid back pay with interest with benefits to which he may be entitled during the period of time not including any period of suspension if the above has not already been done. [¶] So what I have in fact done is denied the petition and attorney's fees. I have ordered that he be reinstated as the hearing officer did. I have ordered that all back pay including benefits with interest be paid forthwith if this has not been done."

The following colloquy ensued between Norton's counsel and the trial court.

"[Norton's counsel]: May I seek some clarification on one part of your order?

"There were two different causes of action. It sounds like you granted the petition in part and are denying it in part. I don't know if that makes any difference how that is labeled, but if you order him reinstated to his job with back pay and benefits and denied that part of his petition that sought to overturn his suspension—Am I correct in that understanding, your Honor?

"There were two different causes of action in the matter. It sounds like you granted one and denied the other. But one cause of action sought to reinstate, and back pay which you have ordered. I will be happy to submit a formal order to that effect for the Court to sign.

"The Court: Well, rather than me sitting here trying to figure this out, why don't you go ahead and submit your suggested order. Send a copy to counsel and I will review it and the pleadings again and determine whether it should be the order that is properly signed."

The record shows Norton's counsel submitted a proposed judgment on the petition, which stated that the court denied the petition as to the second cause of action seeking to overturn Norton's one-month suspension and request for attorney fees, but granted the petition as to the first cause of action seeking

reinstatement, backpay and benefits. The judgment proposed by Norton further stated that "a peremptory writ of mandate is hereby issued commanding [the District]: [¶] (a) to forthwith reinstate [Norton] to his former position as [the District]'s Director of Building Services (recently re-titled Director of Maintenance and Operations), with the full scope of duties and responsibilities such position entails as outlined in the written job description therefore, and [¶] (b) to forthwith award [Norton] full seniority, benefits, and back pay still due to him . . . in the sum of $21,404.03."

The record does not show why the trial court did not sign the proposed judgment submitted by Norton's counsel, or why the trial court instead signed the judgment proposed by the District's counsel, which stated in relevant part, "[t]he Court further directed, in accordance with the Hearing Officer's decision, that [Norton] be reinstated and he receive all unpaid back pay, with interest and benefits, if they have not already been done. The Court further ruled that [Norton] is not entitled to an award of attorney fees. NOW, THEREFORE, [¶] IT IS ORDERED AND ADJUDGED that Petitioner Edward C. Norton's Petition for Writ of Mandate is denied, and [¶] IT IS FURTHER ORDERED AND ADJUDGED that no attorney fees are award [*sic*] to [Norton], and [¶] IT IS FURTHER ORDERED AND ADJUDGED that this Court retain limited jurisdiction for the sole purpose of ascertaining whether [Norton] has been fully paid his back pay, with interest and benefits."

The judgment signed by the trial court, therefore, is internally inconsistent as it denies Norton's request for the issuance of a writ compelling the District to reinstate him and provide him unpaid backpay and benefits, but, at the same time, orders the District to reinstate him and provide unpaid backpay and benefits if it has not already done so. At oral argument on appeal, counsel for Norton and the District each agreed the record shows the trial court failed to decide the issue whether the District reinstated Norton in compliance with the personnel commission's decision. Norton therefore has shown that the trial court erred.

### B.

*The Trial Court Erred by Failing to Issue a Writ Compelling*
*the District to Reinstate Norton to His Former Position.*

Having concluded the trial court erred by failing to decide whether the District had complied with the personnel commission's decision, we have two possible options, depending on the record before us: (1) reverse the judgment and remand the matter to the trial court to decide the issue; or (2) determine if the record shows, as a matter of law, whether the District has reinstated

Norton in compliance with the personnel commission's decision. If the record shows the District has reinstated Norton in compliance with the personnel commission's decision as a matter of law, we would affirm the judgment. If the record shows as a matter of law that the District has not so complied, we would reverse the judgment and direct the trial court to issue a writ compelling the District to do so. If, from the record we cannot determine as a matter of law whether the District has complied with the personnel commission's decision, we would remand the matter to the trial court to decide the issue.

As we will explain, we conclude the record shows as a matter of law the District has not reinstated Norton in compliance with the personnel commission's decision.

We begin by considering the definition of the word "reinstated" as used by the hearing officer in the summary of findings and recommended decision, which was adopted by the personnel commission. Neither the hearing officer's summary of findings and recommended decision nor the personnel commission's decision defines or otherwise elaborates on the details of Norton's reinstatement other than to state Norton was to be "reinstated to his position as Building Services Director."

The District contends the personnel commission's decision merely required the District to do what it has done—restore Norton to his former title of building services director and salary.[5] Norton contends the personnel commission's decision compelled the District to reassign to him the former duties and responsibilities he had assumed as building services director.

Norton cites *Dyer v. Workers' Comp. Appeals Bd.* (1994) 22 Cal.App.4th 1376, 1382 [28 Cal.Rptr.2d 30], a case involving a discrimination claim under Labor Code section 132a, in which the appellate court stated, without elaboration, "[i]n employment discrimination cases, 'reinstatement' may be used to refer to a return of an employee to a former position with the same rights and responsibilities . . . ." Other than Norton's citation to *Dyer,* neither party has cited applicable California legal authority, and we have found none, setting forth a general rule regarding the proper scope of a reinstatement.

---

[5] The District does not contend that it is not required to comply with the personnel commission's decision pursuant to Education Code section 45307, which provides in part, "[i]f the commission sustains the employee, it may order paid all or part of his full compensation from the time of suspension, demotion, or dismissal, and it shall order his reinstatement upon such terms and conditions as it may determine appropriate. The commission may modify the disciplinary action, but may not make the action more stringent than that approved by the board. . . . Upon receipt of the commission's written decision the board shall *forthwith comply* with the provisions thereof." (Italics added.)

■ We agree with *Dyer v. Workers' Comp. Appeals Bd., supra,* 22 Cal.App.4th at page 1382, that generally, an order compelling the reinstatement of an employee to his or her former position without any limitations would logically include the restoration of his or her former duties and responsibilities. We recognize, however, the dearth of legal authority specifically defining "reinstatement" is likely attributable to the challenges inherently associated with that remedy. Employers' needs are often changing. There might be circumstances where an employer's needs have so changed that an employee's former duties and responsibilities cannot be restored because, for example, some or all of them no longer exist.

The record here is dispositive of the question in this case because it contains unrefuted evidence Norton's former duties and responsibilities as building services director continue to exist. Those duties and responsibilities, however, were not restored to Norton when he returned to work for the District, but instead continue to be performed by another employee for reasons unexplained by the District.

Norton's declaration, filed in support of the petition, stated his former position "had effectively been, and is now being performed by one Robert Leon, one of [Norton's] former subordinates, who began serving as Acting Director of Building Services when and since [Norton] was first removed from [his] position in March, 2003." Norton's declaration stated the District had moved Leon into a "new" position with the job title of acting director of maintenance and operations, but had assigned to Leon in that new position Norton's former duties and responsibilities. Norton's declaration also stated the District created a new department entitled maintenance and operations which is "virtually the same as the old Building Services Department." Norton stated in his declaration he was aware that in the past the District has "typically utilized the mechanism or methodology of 'restructuring' or 'reorganizing' departments so as to enable it to lay off employees who cannot otherwise be properly or lawfully terminated." The District did not refute any of this evidence.

Norton also established in his declaration that the duties and responsibilities he had assumed since returning to work for the District are not comparable to his former duties and responsibilities. Norton stated from 1995 until March 2003, as director of building services, he had supervisory and managerial authority. His declaration referred to the written job description for building services director, which defined the position as follows: "To plan, organize and direct the maintenance, operations, construction and building modifications activities of the Building Services Department, including painting, electrical, carpentry, metal and machines, groundskeeping, plumbing, custodial services and engineering design."

In his declaration, Norton also stated he has "simply not yet been returned to the same job duties and responsibilities [he] previously had which officially f[e]ll under the (former) position of Director of Building Services, or the current position [he] hold[s] in name only." He has not been given any supervisory or managerial duties and responsibilities. Instead, his assignments have been "menial and in the nature of custodial work." Norton stated he has been "generally assigned the task of visiting various school sites to conduct inspections for maintenance repair items for the physical plant at such schools," which he stated is "a function historically performed by Quality Control Technician Custodians, not befitting the role of a Director." He added, "[i]n fact, these functions are presently being performed by several other Quality Control Technicians under the supervision of my replacement, Mr. Leon. Had I been reinstated as ordered, I would still be supervising such individuals, as well as Mr. Leon, rather than doing their work myself."

In opposition to the petition, the District neither offered any evidence to refute Norton's declaration nor challenged his credibility, with one exception—the District argued that Norton's new assignments were "extremely important" to the District. The District submitted the declaration of the District's "Assistant Superintendent, Human Resources-Classified/Maintenance & Operations," who stated, "[i]t was felt because of Mr. Norton's experience and authority, that his attention should be directed toward DISTRICT's compliance with the *Williams v. State of California* class action education lawsuit settlement, and legislation passed thereafter. This assignment included visiting and reporting on all schools within the DISTRICT and other various duties. It was extremely important to DISTRICT, involving potentially millions of dollars, and is mandated by law."

The District failed to produce any evidence explaining why it has failed to reinstate Norton to his former duties and responsibilities when they continue to exist. We do not construe the personnel commission's decision to vest the District with discretion to pick and choose which aspects of Norton's former position it would restore. We therefore conclude the record shows as a matter of law the District has failed to reinstate Norton to his former position as required by the personnel commission's decision. We remand the matter to the trial court with directions to issue a writ compelling the District to fully reinstate Norton to the title, salary, and duties and responsibilities of his former position as director of building services, as they existed on March 28, 2003.

## II.

### THE PERSONNEL COMMISSION'S DECISION ADOPTING THE HEARING OFFICER'S RECOMMENDED DISCIPLINE OF NORTON IN THE FORM OF A ONE-MONTH SUSPENSION WITHOUT PAY DID NOT CONSTITUTE AN ABUSE OF DISCRETION.

Norton contends the personnel commission's decision suspending him for one month without pay constituted an abuse of discretion and should have been set aside by the trial court. We disagree.

"It is well settled that in a mandamus proceeding to review an administrative order the determination of penalty by the administrative body will not be disturbed unless there is a clear abuse of discretion. [Citations.] [¶] The standard of review on appeal from a judgment granting or denying a writ of mandate as to an administrative penalty is not as well settled. The majority view is stated in *Osburn* [*v.*] *Department of Transportation* (1990) 221 Cal.App.3d 1339, 1344 [270 Cal.Rptr. 761]. [¶] 'When review of an administrative determination by administrative mandamus is sought and the trial court has applied an abuse of discretion standard, the scope of review is the same in the appellate court as it was in the superior court. The appellate court must determine whether the administrative agency exercised its discretion to an end or purpose not justified by all the facts and circumstances being considered.' [Citations.] Thus, the majority of appellate courts review de novo the agency's exercise of discretion in imposing a penalty." (*Talmo v. Civil Service Com.* (1991) 231 Cal.App.3d 210, 226–227 [282 Cal.Rptr. 240].)

The record shows the personnel commission's decision to adopt the hearing officer's recommendation and suspend Norton for one month without pay did not constitute an abuse of discretion. The hearing officer found that Norton "directed that the invoice from California Surveillance Systems not describe the device as a mini-bug detector" and that Norton was dishonest by doing so. Norton contends the record does not support this finding.[6]

At the administrative hearing, Weatherspoon testified that he met with Norton and Barber regarding the District's acquisition of a miniature bug detector. He further testified as follows:

"Q. In any event, do you recall Mr. Norton expressing any concerns that he had for the bug-detector not to be labeled as such?

"A. Yes.

---

[6] Norton does not contend in this appeal that a one-month suspension would be an inappropriate punishment for such conduct had it occurred.

"Q. Can you tell us about that?

"A. That [Norton and Barber] didn't know if it was someone within the district that was listening in on conferences or meetings, and they wanted it—the description of the unit changed for that reason, because the concerns were someone was listening in on their meetings."

Weatherspoon testified he recalled that Norton and Barber did not want anyone to know what was actually being purchased. He testified Norton was present when Barber asked him to change the description for the miniature bug detector. He also stated, "Norton asked me could the item be changed, okay, not in those exact words. That was our discussion. That was our purpose of the meeting." He testified Norton assured him that the purchasing department would be "okay" with a change in description.

The administrative hearing officer found credible Weatherspoon's testimony Norton was involved in the decision to falsely describe the miniature bug detector as something else. In the summary of findings and recommended decision, the hearing officer stated, "there was no evidence to suggest bias or untruthfulness on the part of the vendor, Mr. Weatherspoon." She further stated, "[i]n fact, Mr. Weatherspoon testified he did not believe changing the name was even inappropriate. However, inasmuch as public funds were used and public documents involved, it was inappropriate. It is unlikely that Mr. Barber would have made the unilateral decision to alter a purchase order. Therefore, Mr. Norton was dishonest in directing the item be disguised on the invoice, or at least responsible for its being disguised by Gerry Barber."

The administrative hearing officer's findings were supported by substantial evidence in the form of Weatherspoon's testimony. The personnel commission did not abuse its discretion by relying on those findings and adopting the one-month suspension recommended by the hearing officer. We therefore affirm the trial court's denial of the second cause of action of the petition seeking to set aside the suspension on the ground it was not supported by the evidence.[7]

---

[7] The minority view of the applicable standard of review provides that "on review of the severity of an administrative penalty the appellate court reviews the *trial court's* determination to see if it is supported by substantial evidence rather than reviewing the *agency's* determination de novo to determine if it was an abuse of discretion." (*Talmo v. Civil Service Com., supra,* 231 Cal.App.3d 210, 227.) Even if we were to apply this standard of review, the result would be the same because, as discussed *ante,* substantial evidence supported the trial court's decision.

## DISPOSITION

The trial court's denial of Norton's petition for writ of mandate is reversed only with regard to the first cause of action contained therein. The matter is remanded to the trial court to issue a writ of mandate compelling the District to fully reinstate Norton to the title, salary, and duties and responsibilities of his former position as director of building services as they existed on March 28, 2003. The judgment is otherwise affirmed. Norton shall recover costs on appeal.

Aronson, Acting P. J., and Ikola., J., concurred.