[No. A131445. First Dist., Div. One. Apr. 30, 2012.]

ERROL M. GILLIS, Plaintiff and Respondent, v.
DENTAL BOARD OF CALIFORNIA, Defendant and Appellant.

**COUNSEL**

Kamala D. Harris, Attorney General, Alfredo Terrazas, Assistant Attorney General, Linda K. Schneider and Kim M. Settles, Deputy Attorneys General, for Defendant and Appellant.

Sellar Hazard Manning Ficenec & Lucia and William E. Manning for Plaintiff and Respondent.

OPINION

BANKE, J.—The Dental Board of California (Board) revoked Dr. Errol M. Gillis's license to practice dentistry after a mishandled root canal procedure and repeated failure to respond to the patient's complaints of postprocedure complications. Gillis petitioned the superior court for issuance of a writ of administrative mandamus directing the Board to set aside its decision. The superior court granted the writ on the basis of numerous perceived legal errors and remanded the matter to the Board. The Board appealed, and we now reverse, concluding there were no prejudicial errors and the administrative record amply supports the Board's disciplinary action.

## I. FACTUAL AND PROCEDURAL BACKGROUND[1]

In 2005 and 2006, Gillis worked part time as an endodontic specialist at Sears Dental in Concord, California. In September 2005, a dentist at a different office referred James J. to Sears Dental for root canal treatment on his No. 20 tooth. Gillis saw James J. for the first time on September 7, 2005, and began treatment. On September 26, James J. returned to Gillis for completion of the root canal.

At this second office visit, things began to go wrong. Gillis excessively "overfilled" James J.'s No. 20 tooth. Such an overfill put James J. at risk of permanent nerve damage within 96 hours and caused him major pain, swelling, and numbness. James J.'s wife called Sears Dental repeatedly on September 26, 27, and 28 in an attempt to confer with Gillis about her husband. Gillis was in the office on those days, but did not return any of the calls. On Friday, September 30, another dentist at a different office, Dr. Hoch, who was then helping James J. with his pain, spoke with Gillis and asked him to call James J.'s wife. Gillis did not call that day either. Gillis, himself, had made no arrangements for James J. to speak with another care provider in case he was unavailable. Finally, on Tuesday, October 4, Gillis called back.

Gillis had been aware of the overfill on the day it occurred, September 26, but did not inform James J. of it and did not note it in his chart. Nor did Gillis record the type of sealer he used during the procedure or contemporaneously record his postoperative instructions to James J. Two weeks later, after James J.'s complaints and contact with Dr. Hoch, Gillis prepared notes

---

[1] In accordance with the applicable standard of review (*post*, at p. 318), we recite the facts as found by the administrative law judge (ALJ).

about his treatment of James J. and put them in the file. These notes were not entirely accurate. For example, they stated Gillis spoke with James J.'s wife on October 1, when in actuality he did not speak with her until October 4.

Three years later, on September 19, 2008, the Board initiated a disciplinary action and filed an accusation against Gillis. Paragraph 5 of the accusation alleged, in seven lettered subparagraphs, numerous charges against Gillis related to his treatment of James J.: (A) negligence in failing to maintain complete patient records; (B) negligence in failing to develop and present to the patient a comprehensive treatment plan; (C) negligence in continuing to operate on a patient while the patient was under stress or duress; (D) negligence in using excessive force during the root canal treatment; (E) gross negligence and incompetence in overfilling the patient's tooth during the root canal treatment; (F) negligence in failing to note, remove, or advise the patient of the overfill; and (G) gross negligence and unprofessional conduct in failing to respond for seven days to James J.'s wife's postprocedure phone calls seeking help.

After a five-day hearing spanning days in June, July, and September 2009, an ALJ issued a proposed decision on December 3, 2009. The decision found the facts as set forth above and concluded Gillis was both grossly negligent and incompetent under Business and Professions Code section 1670[2] for overfilling James J.'s tooth (par. 5E), both grossly negligent and engaging in unprofessional conduct under section 1670 for failing to respond to the wife's calls (par. 5G), and repeatedly negligent under section 1670 for failing to maintain complete patient records and failing to note the overfill or advise James J. about it (pars. 5A and 5F). The ALJ found the Board had not proved the other allegations of the accusation.

The ALJ noted under the Board's disciplinary guidelines, the penalty for an instance of gross negligence or unprofessional conduct can range from, at a minimum, stayed revocation of license with probation to, at a maximum, license revocation. (See Cal. Code Regs., tit. 16, § 1018; Dental Bd. of Cal., Disciplinary Guidelines with Model Language (Aug. 30, 2010) p. 38 <http://www.dbc.ca.gov/formspubs/pub_dgml.pdf> [as of Apr. 30, 2012].)[3]

---

[2] All further statutory references are to the Business and Professions Code unless otherwise indicated.

[3] We take judicial notice of the Board's guidelines on our own motion. (*Casella v. SouthWest Dealer Services, Inc.* (2007) 157 Cal.App.4th 1127, 1137 [69 Cal.Rptr.3d 445] [judicial notice appropriate for government agency publications]; *Deschene v. Pinole Steel Co.* (1999) 76 Cal.App.4th 33, 37, fn. 2 [90 Cal.Rptr.2d 15] [judicial notice on own motion].)

The judge concluded "[p]robation is not appropriate in this case," because even if Gillis's "charting and technical skills could be corrected, the evidence reveals that [he] is not a trustworthy practitioner," was "indifferent to James J.'s needs," fabricated evidence to enhance his chances at his hearing, and tried to pass blame to others rather than admit his conduct.[4]

The Board adopted the ALJ's proposed decision as its own on December 23, 2009.

On January 22, 2010, Gillis petitioned the San Francisco Superior Court for a writ of mandate under Code of Civil Procedure section 1094.5. The trial court reviewed the administrative record and the moving, opposing, and reply papers, and held a 30-minute hearing on June 22, 2010.

At the hearing, the trial court read its tentative ruling. The tentative ruling stated, "[u]nder an independent review of the judgment, and reviewing findings of law de novo, the court finds that the ALJ made several errors of law." The ruling then listed these perceived errors in the Board's decision:

(1) The Board was wrong to conclude Gillis's failure to return phone calls was unprofessional conduct under section 1670, because such conduct was not expressly listed amongst the types of unprofessional conduct enumerated in sections 1680, 1681, or 1682, part of the Dental Practice Act (§ 1600 et seq.).

(2) "Gross negligence appears to be more than a substantial departure from the standard of care."

---

[4] The decision also summarized two prior disciplinary actions against Gillis. In 1988, the Board placed Gillis on three years' probation for prescribing controlled substances to his wife who was suffering from a medical condition. In 1994, the Board, pursuant to a stipulated settlement and decision, placed Gillis on five years' probation and suspended him from the practice of dentistry for one year. Gillis admitted to taking money from one patient and abandoning him, abandoning another patient without written notice, excessively prescribing drugs and prescribing drugs to those not under his treatment, neglecting infection control guidelines and maintaining unsanitary office conditions, and using intoxicating and controlled substances to endanger himself and the public. In 1998, the Board granted early termination of the probation imposed in 1994, attributing Gillis's conduct at issue in the 1994 and 1988 matters to long-standing drug and alcohol abuse exacerbated by his daughter's untimely death in 1979 and found Gillis successfully obtained treatment and had been clean and sober since 1992.

While this history was recited in the ALJ's decision, it was not identified as a basis for, or even mentioned, in the section of the decision explaining the ALJ's disciplinary recommendation.

(3) The Board could not discipline Gillis for both gross negligence and incompetence for the same act, the overfilling of the patient's tooth, and for both unprofessional conduct and gross negligence for the same act, failing to return phone calls. Section 1670, according to the superior court, "prohibits the imposition of multiple forms of discipline for the same wrongful act."

(4) The Board's "decision does not provide analysis that [Gillis] was grossly negligent rather than simply negligent for failure to return phone calls."

(5) The Board erred by defining "repeated negligence" in section 1670 as two or more acts of negligence.

(6) "It is unclear on what conduct the discipline was imposed."

The tentative ruling concluded: "In view of the errors in legal theory, and the ambiguities noted in the decision [of the Board], the matter is remanded for redetermination of penalty."

Before inviting argument from counsel, the trial court noted it reached its tentative ruling: "after . . . going through the box [of administrative record materials] and trying to grapple with the decision that was issued and the *James* decision, and I came to the conclusion that I was not competent based upon what I perceived to be errors that the discipline was appropriate. I really felt that this was a situation that needed to go back so that, in view of the Court's ruling, that it could be re-examined and reformatted, so I had a better idea of exactly why this discipline and how it fits into the code sections."

After argument by counsel, the trial court stated it would "adopt the tentative decision as I have written it" and "what I really want is for the ALJ or the Board to reconsider the decision, format it in terms that the Court expects."

On December 9, 2010, the trial court issued an order granting Gillis's writ petition, noting it had previously adopted its tentative ruling, which it incorporated by reference. At no point during the trial court proceeding did the court make any new or different factual findings or reweigh the credibility of witnesses.

Gillis filed and served a notice of entry of judgment on January 4, 2011, and the Board filed a notice of appeal on March 1, 2011.

## II. DISCUSSION

*Appealability*

■ We first address whether the trial court's judgment granting Gillis's writ petition and remanding the matter to the Board is appealable. "A remand order to an administrative body is not appealable." (*Village Trailer Park, Inc. v. Santa Monica Rent Control Bd.* (2002) 101 Cal.App.4th 1133, 1139–1140 [124 Cal.Rptr.2d 857].) Thus, where a judgment "partly granted [a] writ petition and remanded the proceeding" to the Board " 'to reconsider your action' with respect to the calculation of damages," that judgment was not an appealable order. (*Ibid.*, citing *Board of Dental Examiners v. Superior Court* (1998) 66 Cal.App.4th 1424, 1430 [78 Cal.Rptr.2d 653].) "We may, however, exercise our discretion and treat an appeal as a petition for a writ of mandate." (*Village Trailer Park, Inc. v. Santa Monica Rent Control Bd.*, at p. 1140; see *Board of Dental Examiners v. Superior Court*, at p. 1430; *Green v. Board of Dental Examiners* (1996) 47 Cal.App.4th 786 [55 Cal.Rptr.2d 140].) When there is public interest in a matter and when a matter has been fully briefed on the merits, we are inclined to treat an appeal as a petition for writ of mandate and rule on the merits. (*Bolsa Chica Land Trust v. Superior Court* (1999) 71 Cal.App.4th 493, 501–502 [83 Cal.Rptr.2d 850] [treating appeal from remand order as a writ petition].)

Neither the Board nor Gillis has raised the issue of appealability. We conclude addressing the merits at this time will serve judicial economy, and therefore deem the Board's appeal to be an original writ proceeding and turn to the merits of the judgment.

*Standard of Review*

Because the right to practice one's profession is a fundamental vested right, if an administrative agency revokes a person's professional license, a trial court must apply its independent judgment when reviewing the agency's decision on a petition for writ of mandate. (*Sandarg v. Dental Bd. of California* (2010) 184 Cal.App.4th 1434, 1440 [109 Cal.Rptr.3d 826].)

" ' " 'Under the independent judgment rule, the trial court must weigh the evidence and make its own determination as to whether the administrative findings should be sustained. When an appeal is taken from the trial court's determination, it is given the same effect as any other judgment after trial rendered by the court: the only question is whether the trial court's (not the administrative agency's) findings are supported by substantial evidence. [Citation.] Conflicts in the evidence must be resolved in favor of the judgment and where two or more inferences can be reasonably drawn from

the facts, the reviewing court must accept the inferences deduced by the trial court.' [Citation.] However, '. . . the trial court's legal conclusions are open to our examination to determine if errors of law were committed.' [Citation.]" ' " (*Sandarg v. Dental Bd. of California, supra,* 184 Cal.App.4th at p. 1440, italics omitted.)

While "[o]n appeal, we normally presume the trial court made all findings necessary to support the judgment," when a trial court judgment makes no findings of its own and, for instance "recites only that the court applied the independent judgment rule," we cannot broadly infer factfinding by the trial court and must instead look to the facts as found by the ALJ. (*James v. Board of Dental Examiners* (1985) 172 Cal.App.3d 1096, 1106–1107 [218 Cal.Rptr. 710] (*James*) ["because we have no statement of decision by the trial court, and its tentative decision is so nebulous that it is of no aid in our review of the record for the sufficiency of the evidence and the appropriateness of the penalty, we look necessarily to the decision of the ALJ for guidance"]; cf. *Green v. Board of Dental Examiners, supra,* 47 Cal.App.4th at p. 796 [a reviewing court " ' "may look to the findings in [the administrative agency's] decision for guidance in determining whether the trial court's judgment is supported by substantial evidence" ' "].)

Gillis and the Board do not challenge the facts found by the ALJ. Nor did the trial court disturb the agency's factfinding, instead basing its decision to issue a writ and remand the matter for a new penalty determination on perceived legal errors. Under these circumstances, we accept the now uncontested facts found by the ALJ and review the legal issues de novo. (See *Stermer v. Board of Dental Examiners* (2002) 95 Cal.App.4th 128, 132 [115 Cal.Rptr.2d 294] [if "evidence is undisputed" and review "involves only an issue of law, then we apply our independent judgment regarding the action of the administrative agency"].)

*Trial Court's Legal Conclusions*

*Failure to Return Phone Calls as Unprofessional Conduct*

The trial court concluded the Board could not discipline Gillis for his failure to return James J.'s wife's phone calls (par. 5G of the accusation) because the Dental Practice Act (DPA) does not specifically identify such conduct as unprofessional. The trial court was concerned it would be unfair to penalize practitioners for unlisted conduct without notice.

Section 1670, part of the DPA, provides: "Any licentiate may have his license revoked or suspended or be reprimanded or be placed on probation by the board for unprofessional conduct, or incompetence, or gross

negligence, or repeated acts of negligence in his or her profession . . . ." (§ 1670.) Section 1680 states unprofessional conduct "is defined as, *but is not limited to*" a lengthy list of behaviors including, for example, "(n) The violation of any of the provisions of this division," "(s) The alteration of a patient's record with intent to deceive," and "(u) The abandonment of the patient by the licensee . . . ." (§ 1680, italics added.) Sections 1681 and 1682 specify additional types of unprofessional conduct.

Section 1680's statement that unprofessional conduct "is not limited to" its list of examples means unlisted conduct may be "unprofessional conduct" subject to discipline. (*People v. Arias* (2008) 45 Cal.4th 169, 182 [85 Cal.Rptr.3d 1, 195 P.3d 103] [it is a "general rule of statutory construction that '[u]se of the language "including, but not limited to" in the statutory definition is a phrase of enlargement rather than limitation' "]; *People v. Williams* (2010) 184 Cal.App.4th 142, 147 [108 Cal.Rptr.3d 772] [the phrase "strongly indicates that the categories listed in the statute were not intended to be exclusive"]; *Sanchez v. State of California* (2009) 179 Cal.App.4th 467, 484 [101 Cal.Rptr.3d 670] [the phrase means a list is not exclusive].) Moreover, the Legislature's selection of the "not limited to" phrase was no accident. The Legislature inserted the phrase by amendment in 1979, purposefully expanding the statute's reach. (Stats. 1979, ch. 653, § 7, p. 2011; *id.*, ch. 1007, § 5.5, p. 3426 [substituting "by a person licensed under this chapter is defined as, but is not limited to, the violation of" for "is defined to be" in the introductory clause of § 1680].)

Not only does the plain language of section 1680 demonstrate its list of behaviors is nonexclusive, courts have long interpreted similar language in the statute governing medical doctors' unprofessional conduct in the same manner. (See, e.g., *Shea v. Board of Medical Examiners* (1978) 81 Cal.App.3d 564, 574–575 [146 Cal.Rptr. 653] [interpreting phrase " 'but is not limited to' " to allow discipline for unlisted conduct "which indicates an unfitness to practice medicine," and concluding there is no unfairness to discipline respondents in so doing].) The courts have also rejected arguments that such a construction transgresses due process rights. (See, e.g., *id.* at pp. 574–576.)

Accordingly, the Board is correct that Gillis may be disciplined for unprofessional conduct not explicitly listed in the DPA.

### *Two Acts, Repeated Negligence*

The trial court also ruled the Board erred by concluding it could discipline a practitioner for "repeated negligence" under section 1670 based on "two or more acts," agreeing with Gillis that it takes at least three negligent acts. In the discipline of medical doctors, however, the phrase " '[r]epeated negligent

acts' " means "two or more acts." (*Zabetian v. Medical Bd.* (2000) 80 Cal.App.4th 462, 468 [94 Cal.Rptr.2d 917] (*Zabetian*).)[5] This is a logical, straightforward interpretation of the phrase that affords some degree of flexibility to the Board in imposing discipline (see 80 Cal.App.4th at p. 468; § 1670 ["may" discipline for "repeated acts of negligence"]), while aligning disciplinary terminology for medical doctors and dentists. We can discern no reason for the terminology to have a different meaning for dentists.

■ Gillis cites to *James, supra*, 172 Cal.App.3d at page 1109, which predates *Zabetian* by 15 years and holds that "two acts of simple negligence, by themselves, probably do not support any discipline or, at most, justify imposition of a probationary period." (*James*, at p. 1109.) However, this language only reinforces that two acts may, in appropriate circumstances, give rise to discipline.

■ Accordingly, the Board is correct that Gillis may be disciplined for "repeated negligence" based on two negligent acts.

### Gross Negligence and Unreturned Calls

The trial court concluded the Board's "decision does not provide analysis that [Gillis] was grossly negligent rather than simply negligent for failure to return phone calls" to James J.'s wife as charged in paragraph 5G. The trial court also stated "[g]ross negligence appears to be more than ·a substantial departure from the standard of care."

By these remarks, the trial court appears to have been concerned about the testimony of the Board's expert, who stated Gillis's failure to return calls was "gross negligence" but defined the concept—if only at the outset of his testimony and in response to a leading question from the Board's counsel—as a "substantial departure" from a dentist's standard of care, not an "extreme departure," the typical turn of phrase associated with gross negligence.[6]

Although the Board's expert may have used the term "substantial departure" at one point, Gillis's experts defined gross negligence as an "extreme

---

[5] The Legislature codified the holding in *Zabetian* in 2002 by expressly defining "repeated negligent acts" for purposes of disciplining medical doctors: "To be repeated, there must be two or more negligent acts or omissions." (§ 2234, subd. (c), as amended by Stats. 2002, ch. 1085, § 21, p. 7027.)

[6] The Board's expert merely acceded to the definition suggested by the Board's counsel in questioning. Counsel asked, "Do you understand the term 'gross negligence' to be a substantial departure from the standard of care?" and the expert answered, "A substantial departure, yes." Later, the expert accepted Gillis's counsel's implication that gross negligence was an extreme departure. Counsel asked, questioning the expert on a topic other than Gillis's failure to return calls, "that's where you get gross negligence and extreme departure from the standard of care?" and the expert responded, "And incompetence, yes."

departure" and, more importantly, the Board applied the "extreme departure" standard in its analysis. The Board also analyzed how failing to handle complications and respond to messages would, in many cases, be ordinary negligence, but how in these particular circumstances—including Gillis's long period of nonresponsiveness—the failure was grossly negligent. Thus, although the Board's expert did not employ some of the specific legal jargon of gross negligence, he did testify Gillis's conduct was "gross negligence" and provided the ALJ and the Board with the foundation needed to conclude Gillis's extended failure to return calls was not merely ordinary negligence.

█   Thus, the case at hand is not like the situation discussed in *Glover v. Board of Medical Quality Assurance* (1991) 231 Cal.App.3d 203, 207–208 [282 Cal.Rptr. 137], in which the record "contained no evidence, statute, rule, regulation, or implied standard by which to measure . . . competence." Further, failures in office communications are different from failures in treatment, and expert testimony crucial to understanding the latter may shed little light on the former.[7] (See *Franz v. Board of Medical Quality Assurance* (1982) 31 Cal.3d 124, 142 [181 Cal.Rptr. 732, 642 P.2d 792] (*Franz*) ["No expertise is necessary to conclude that Franz' choice of Anaheim for Wollweber's operation was an extreme departure from the acceptable standard of medical care . . . ."].)

Accordingly, the Board is correct that under the circumstances of this case Gillis may be disciplined for gross negligence based on his extended failure to return phone calls seeking help for serious, posttreatment complications.

### Two Charges, One Act

The trial court ruled the Board could not discipline Gillis for both gross negligence and incompetence for the same act, the overfilling of the patient's tooth (par. 5E), and for both unprofessional conduct and gross negligence for another act, failing to return phone calls (par. 5G). Section 1670, according to the trial court, "prohibits the imposition of multiple forms of discipline for

---

[7] Gillis also cites *McBride v. California Bd. of Accountancy* (2005) 130 Cal.App.4th 518, 529–530 [30 Cal.Rptr.3d 287], as holding gross negligence must be established by expert testimony. But the case holds only that a trial court may find gross negligence based on expert testimony, a very different proposition. Thus, although the "[a]ppellants contend[ed] that the Board's, and the trial court's, findings that appellants were grossly negligent [were] not supported by expert testimony," *McBride* did not address whether that kind of testimony is necessary to prove gross negligence. (*Id.* at p. 529.) Rather, it only found, on the facts before it, a conclusory statement by one expert—that "appellants 'were grossly negligent in the conduct of the 1993 Orange County audit in the area of auditing management's assertions regarding compliance to laws and regulations governing investments' "—was sufficient. (*Id.* at fn. 11.) Moreover, as discussed, the record did contain expert testimony addressing Gillis's departure from the standard of care.

the same wrongful act." Further, the trial court concluded "[i]t is unclear on what conduct the discipline was imposed."

■ As we have recited, section 1670 provides that: "Any licentiate may have his license revoked or suspended or be reprimanded or be placed on probation by the board for unprofessional conduct, or incompetence, or gross negligence, or repeated acts of negligence in his or her profession . . . ." The section says nothing about imposing multiple forms of discipline for the same wrongful act, and we do not read the use of the disjunctive "or" as implying such a limitation. Rather, the statute enumerates the various kinds of misconduct for which discipline can be imposed.

■ It is well established that an operative pleading, like the Board's accusation against Gillis, can allege multiple causes of action or charges based on the same conduct. (See *Crowley v. Katleman* (1994) 8 Cal.4th 666, 690–691 [34 Cal.Rptr.2d 386, 881 P.2d 1083] [recognizing "modern practice of pleading 'inconsistent counts'—i.e., alternative factual or legal theories—when the pleader is in doubt as to which theory most accurately reflects the events and can be established by the evidence"]; *Mendoza v. Continental Sales Co.* (2006) 140 Cal.App.4th 1395, 1402 [45 Cal.Rptr.3d 525] [same].)

It is also well recognized that the same conduct can be found to constitute various wrongs. (See *Tavaglione v. Billings* (1993) 4 Cal.4th 1150, 1158–1159 [17 Cal.Rptr.2d 608, 847 P.2d 574] [noting a plaintiff may prevail on numerous counts, but a recovery of damages cannot be duplicative]; see also Pen. Code, § 954 ["An accusatory pleading may charge two or more different offenses connected together in their commission . . ." and "the defendant may be convicted of any number of the offenses charged . . . ."]; *People v. Reed* (2006) 38 Cal.4th 1224, 1227 [45 Cal.Rptr.3d 353, 137 P.3d 184] [noting this rule and its judicially created exception for crimes that are necessarily lesser included offenses under the "statutory elements" test].)[8]

It appears the trial court was concerned by the policy codified in Penal Code section 654, which requires that sentence be stayed for additional crimes

[8] While criminal law offers some guidance in disciplinary matters, we recognize criminal punishment and administrative discipline are distinct, and one body of law may or may not have application in the other context. (Compare *Shively v. Stewart* (1966) 65 Cal.2d 475, 479 [55 Cal.Rptr. 217, 421 P.2d 65] ["The criminal law analogy is appropriate . . ." in a doctor's disciplinary matter, and the court permitted prehearing subpoenas from the accused to the medical board.] with *Medical Board v. Superior Court* (2003) 111 Cal.App.4th 163, 173 [4 Cal.Rptr.3d 403] ["Due process considerations do not require that statutes and administrative proceedings for imposing discipline on a professional license be measured by standards developed in criminal law."] and *Landau v. Superior Court* (1998) 81 Cal.App.4th 191, 222 [97 Cal.Rptr.2d 657] ["Dr. Landau refers us to no case outside the criminal law sentencing context which refers to this rule and we question its application to this civil discipline proceeding context."].)

based on the same acts or omissions. (Pen. Code, § 654, subd. (a) ["An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision. . . ."].)

However, more apposite guidance is provided by the cases addressing the sufficiency of the evidence to support administrative actions. When an agency " 'has imposed a single penalty based on multiple charges of misconduct, and the court holds some of them to be unsupported, the practice normally to be employed is to return the case to the administrative agency with a direction to reconsider the penalty to be imposed.' But this can be done only when some of the charges are unsupported by the evidence and the court cannot ascertain from the record whether the same penalty would have been imposed . . . ." (*Thayer v. Board of Osteopathic Examiners* (1958) 157 Cal.App.2d 4, 9–10 [320 P.2d 28] (*Thayer*).) Thus, in *Thayer*, where there was "no absence of supporting evidence" on any disciplinary charge, there was "no occasion to remand." (*Id.* at p. 10.) Similarly, in *Strode v. Board of Medical Examiners* (1961) 195 Cal.App.2d 291, 293, 303–304 [15 Cal.Rptr. 879] (*Strode*), record evidence supported each of the agency's three charges of misconduct. With the agency's factfinding undisturbed after review and still "support[ing] the overall conclusion of . . . the penalty imposed," there was no need for reconsideration of the penalty. (*Id.* at p. 304.) "Even in cases in which one or more of the findings must be stricken as unsupported by the evidence," noted *Strode*, "a 'real doubt' must arise 'from the record as to whether the agency would have inflicted the particular penalty had it realized that the evidence was not sufficient to support certain of the charges.' " (*Ibid.*) Otherwise, remand would be improper. (*Ibid.*)

■ *Franz, supra*, 31 Cal.3d at page 145 and *James, supra*, 172 Cal.App.3d at page 1109, which Gillis cites, applied these same rules, but reached different results because the circumstances were different. Thus, in *Franz, supra*, at page 145, the Supreme Court restated the rule: "If an agency has imposed a single discipline for multiple charges, some of which are found not sustained by evidence, and if there is 'real doubt' whether the same action would have been taken on proper findings, the matter will be returned to the agency for redetermination of penalty." In that case, the board and trial court found the physician committed six acts of gross negligence and acts of dishonesty and falsification of medical documents. (*Id.* at p. 135.) On writ review, the Supreme Court determined the evidence did not support three of the gross negligence charges. (*Id.* at p. 145.) Because the board had imposed discipline based broadly on the doctor's gross negligence and the other charges, the Supreme Court held a writ should issue and the matter remanded for further proceedings pertaining to the appropriate discipline. (*Ibid.*)

Similarly, in *James, supra*, 172 Cal.App.3d at page 1102, the Board found the dentist had committed "abandonment as to one patient; incompetence as to two other patients; and negligence as to two remaining patients" and that "each of the above acts constituted unprofessional conduct." On writ review, the Court of Appeal determined the ". . . ALJ in her determination of issues unexplainedly found that gross inefficiency, incompetence and negligence all constituted unprofessional conduct." (*Id.* at p. 1107.) The ALJ's per se approach to finding unprofessional conduct and the "failure of [her] findings of fact to support the determination of the issues" resulted in a situation in which the appellate court did "not know if the Board revoked [the practitioner's] license for misconduct as revealed in the findings, or upon the misconception that his acts constituted unprofessional conduct." (*Id.* at p. 1109.) "Aside from the question of substantial evidence" (the court also found some charges lacking in support (*ibid.*)), it stated, " 'real doubt' exists as to whether the Board revoked Dr. James' license for five acts of unprofessional conduct, or for one act of unprofessional conduct, two acts of incompetence and two acts of simple negligence. The latter basis certainly does not support the harsh penalty imposed" (*ibid.*). Accordingly, the Court of Appeal held a writ should issue and the matter remanded so the Board could reexamine its penalty in light of the court's ruling. (*Id.* at p. 1116.)

The problems identified in *Franz* and *James* are not present here, and this case is more like *Thayer* and *Strode*. Unlike in *James*, the ALJ here addressed each charge—gross negligence, unprofessional conduct, and so forth—separately, and did not assume that all grossly negligent acts were necessarily unprofessional or incompetent. And each of the charges sustained by the ALJ and adopted by the Board is, as we have discussed, supported by substantial evidence.[9] Accordingly, the Board's imposition of the most serious level of discipline—revocation of Gillis's license—based on the totality of the circumstances, was a permissible exercise of its discretion and no remand is necessary.

A court will not disturb an agency's choice of "penalty unless the licensee demonstrates an abuse of discretion" and "[n]either a trial court nor an appellate court is free to substitute its discretion for that of an administrative agency concerning the degree of punishment imposed." (*California Real Estate Loans, Inc. v. Wallace* (1993) 18 Cal.App.4th 1575, 1580 [23 Cal.Rptr.2d 462]; see *Norton v. San Bernardino City Unified School Dist.*

---

[9] Nor is there "real doubt" about what the result would be if the matter were remanded. The Board may revoke a license for even a single instance of gross negligence or unprofessional conduct. (Dental Bd. of Cal., Disciplinary Guidelines with Model Language, *supra*, at p. 38 <http://www.dbc.ca.gov/formspubs/pub_dgml.pdf> [as of Apr. 30, 2012].) And the Board has informed this court it would, if required to provide further specificity on remand, "merely . . . select a single cause for discipline out of the multiple bases found to reimpose the same discipline" of revocation.

(2008) 158 Cal.App.4th 749, 763 [69 Cal.Rptr.3d 917].)[10] We discern no abuse of discretion here in the Board's selected penalty.

## Contentions Not Addressed by Superior Court

Since we have concluded the perceived legal reasons identified by the trial court do not support issuance of a writ and remand, we address the additional arguments Gillis has advanced in support of the trial court's decision.

### The Negligence Charge

In addition to claiming two acts are not sufficient to establish "repeated negligence," Gillis contends the acts of alleged negligence are insufficiently discrete because the Board pleaded one of these acts, negligence in charting, as consisting of multiple deficiencies, but proved only a subset of them. He also contends the Board found Gillis negligent in charting without expert testimony.

The two negligent acts for which the Board disciplined Gillis were (1) failing to keep complete patient records (par. 5A of the accusation) and (2) failing to advise James J. there was an overfill of his No. 20 tooth (par. 5F of the accusation). The DPA does not address whether acts of negligence must be distinct in some way from one another to count as "repeated." The Medical Practice Act (§ 2000 et seq.), however, does. "An initial negligent act or omission followed by a separate and distinct departure from the applicable standard of care shall constitute repeated negligent acts." (§ 2234, subd. (c); see *Zabetian, supra,* 80 Cal.App.4th at pp. 464–465 [affirming discipline for repeated negligent acts under the Medical Practice Act when a doctor (1) left town while a patient was in intensive care and (2) misdiagnosed that same patient].) Even assuming the Medical Practice Act's potentially more restrictive definition of "repeated negligence" applies here, Gillis's failure to chart and failure to inform were sufficiently "separate and distinct" departures to support discipline for "repeated negligence."

Gillis's assertion that the Board essentially "overpleaded" its charge in paragraph 5A for negligent keeping of patient records and could only find Gillis negligent for charting deficiencies if it proved all of the several deficiencies it alleged is without merit. Although the Board ultimately exonerated Gillis of several of the alleged failings in paragraph 5A, it did find

---

[10] *Norton* references the minority viewpoint that the appellate court reviews a trial court determination of penalty for substantial evidence rather than reviewing the agency's penalty de novo. (*Norton v. San Bernardino City Unified School Dist., supra,* 158 Cal.App.4th at p. 764, fn. 7.) Even if we accepted the minority position, it would be inapplicable here since the trial court did not select a penalty.

deficiencies—namely, that Gillis did not chart the sealant he used or his postoperative instructions—and concluded they constituted negligence. Gillis cites no authority prohibiting the Board from acting on those deficiencies, or requiring the Board to set forth every single alleged deficiency of a similar nature in a separate numbered or lettered paragraph. That would unreasonably put form over substance, a result incompatible with the "great liberality in pleadings before the dental and medical boards." (*Bley v. Board of Dental Examiners* (1932) 120 Cal.App. 426, 430 [7 P.2d 1053].)

Also, assuming expert testimony was required to support the charge in paragraph 5A for negligent keeping of patient records, the expert testimony before the Board was sufficient. Dr. Schulz testified it was below the standard of care to not chart the sealant used during a root canal and to omit postoperative instructions, and the Board found Gillis did not meet these standards.[11]

### "Vicarious" Liability for Failing to Return Calls

Gillis argues any failure on his part to return the phone calls of James J.'s wife (par. 5G of the accusation) was due to shortcomings of his staff and he cannot be held accountable for them. Gillis ignores the facts as the Board found them. Gillis was in the office on September 26, 27, and 28, all days on which James J.'s wife called. On Friday, September 30, having left town without returning the calls, Gillis was personally informed by another dentist of James J.'s condition and his wife's desire to speak with Gillis. Yet, Gillis still did not call back, until four days later, on October 4. Nor had Gillis made any arrangements for James J. to speak with another care provider in case he was unavailable. Thus, the record contains ample evidence to support the Board's finding that Gillis was personally at fault.

### Waiver

Gillis contends the trial court rejected "[a]ll charges as to the overfill" of James J.'s No. 20 tooth and contends the Board waived those charges here on appeal. This contention is baseless. The trial court did not address whether the overfill could support disciplinary action, and we will not infer that it addressed that factual issue in any way, let alone infer that it rejected the Board's findings and found the overfill charges unsupported.

---

[11] Gillis also argues substantial evidence supports the trial court's "implicit[] overturn[ing]" of the Board decision on the negligence charges in paragraphs 5A and 5F. But the trial court did not overturn, implicitly or otherwise, the Board's determination that Gillis committed simple negligence as charged in those paragraphs. We do not address this contention further.

## III. Disposition

The judgment granting Gillis's writ petition and remanding the matter to the Board is reversed, with directions to issue an order denying his writ petition and entering judgment in favor of the Board.

Margulies, Acting P. J., and Dondero, J., concurred.

Respondent's petition for review by the Supreme Court was denied August 15, 2012, S203189.